IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 3 0 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF MARIA SANTOS GARCIA | § | |
| BANDA, DECEASED, JESUS MORENO | § | |
| GARCIA, DORA MORENO GARCIA, | § | |
| BARBARA MORENO GARCIA, | § | |
| ADVIENTA MORENO GARCIA PRADO, | § | |
| SABINA MORENO GARCIA, MONICA | § | |
| MORENO GARCIA, SOCORRO MORENO | § | CIVIL ACTION NO. **B-03-030** |
| GARCIA MENDOZA, JUAN PABLO | § | |
| MORENO GARCIA, MARIA SANTOS | § | |
| MORENO GARCIA , VALERIE MORENO | § | |
| GARCIA | § | |
| | § | |
| VS. | § | |
| | § | |
| AIRPAX ACQUISITION, L.L.C., | § | |
| AIRPAX CORPORATION, L.L.C. and | § | "JURY" |
| AIPAX DE MEXICO, S.A. | § | |

**DEFENDANT AIRPAX CORPORATION, L.L.C.'S
NOTICE OF REMOVAL**

TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF TEXAS, BROWNSVILLE DIVISION:

Defendant Airpax Corporation, L.L.C., ("Airpax"), by and through its counsel, F. Edward

Barker, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446, hereby removes cause number 2002-12-

5078-G, captioned <u>Silva, et al. vs. Airpax Corporation, L.L.C., et al,</u>, from the District Court of the

404th Judicial District, Cameron County, Texas, to the United States District Court for the Southern

District of Texas, Brownsville Division. As grounds therefore, the Airpax Defendant states:

1.      Any civil action of which the district courts of the United States have original jurisdiction may be removed from state court to federal court. 28 U.S.C. § 1441(a). The district courts of the United States have original jurisdiction of all actions between citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(2).

2.      The present action is between citizens of various American states and citizens of a foreign state. All Plaintiffs are citizens of Mexico. (Plaintiffs' Original Petition at pages 1and 2; hereafter the "Complaint"; copy attached as Exhibit "A"). None of the Defendants are a citizen of Mexico (*See* Affidavit of Michael Rabasca attached hereto as Exhibit "B")

      a.      Defendant Airpax is incorporated under the laws of the State of Delaware. (*See* Exhibit "A", Complaint at p. 2, ¶ II(L); Exhibit "B", Affidavit of Michael V. Rabasca.) Defendant Airpax Corporation maintains no principle place of business in Texas but only has a "staging center" in Texas facilitating its business in Mexico. (Exhibit "B", Affidavit of Michael V. Rabasca). Defendant Airpax is and at all times has been a citizen of the State of Delaware. 28 U.S.C. § 1332(c).

      b.      Defendant Airpax states that there is no longer any entity known as Airpax Acquisition, L.L.C. Notwithstanding the misleading allegations of the Complaint, the Airpax Acquisition, L.L.C. entity was dissolved several years ago when the relationship between Philips Electronics North America Corporation was terminated. (*See* Exhibit "B", Affidavit of Michael V. Rabasca).

      c.      Defendant Airpax de Mexico is a mere department of Airpax Corporation, L.L.C. and as such its citizenship is that of its parent company. [see ESI, Inc., vs. The Coastal Corporation, et al , 61 F. Supp.2nd 35, USDC D.D. NY, 1999].

3.      It is facially apparent that the amount in controversy in this action exceeds $75,000 exclusive of interest and costs. See 28 U.S.C. § 1332(a). This is an action for wrongful death. (Complaint at p.4 , ¶ IV(4)). Plaintiffs are the surviving relatives and/or personal representatives

of the estate of one of two individuals who were killed in an accident in Mexico. (Complaint at p. 1, ¶ II(A) through p. 2, ¶ II(K)). Assuming that the Plaintiffs could prove all of the allegations of their Complaint and that the Defendants had no defenses, each Plaintiff could be expected to recover an amount exceeding $75,000. See McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994); Garza v. Bettcher Industries, Inc., 752 F. Supp. 753, 763, (E.D. Mich. 1990). The amount in controversy is determined from the Plaintiffs' point of view and assumes the success of all claims and the failure of all defenses. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 60 L.Ed. 174, 36 S. Ct. 30, 32 (1915) (amount in controversy is determined from Plaintiffs' point of view); Myers v. Long Island Lighting Co., 623 F. Supp. 1076, 1078-1079 (E.D.N.Y. 1985) (same); McGraw, supra, 863 F. Supp. at 434; Garza, supra, 752 F. Supp. at 763. Plaintiffs contend that Texas law applies. (Complaint at p. 3, ¶ 11). Under Texas law, and in particular, in the Rio Grande Valley area, each Plaintiff could be expected to recover an amount exceeding $75,000.

4.     This Notice of Removal has been timely filed under 28 U.S.C. ¶ 1446(b). The 30-day period of 28 U.S.C. § 1446(b) begins to run from the time the first Defendant is formally served with summons and a copy of the complaint. Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 143 L.Ed.2d 448, 119 S. Ct. 1322, 1325, 1329-1330 (1999). Here, Plaintiffs formally served Defendant Airpax Corporation, L.L.C., on January 2, 2003. (See Exhibit "C", Copy of Executed Process on Defendant Airpax Corporation, L.L.C.). This Notice of Removal has been filed within 30 days of the date when Plaintiffs formally served Defendant Airpax, Corporation, L.L.C., the first Defendant to be served, with a summons and copy of the Complaint.

5.     This Notice of Removal is filed by Defendant Airpax Corporation, L.L.C.. If it is

necessary for there to be a consent of its department, Airpax de Mexico, then Airpax de Mexico concurs in this removal. No consent is required of named Defendant Airpax Acquisition, L.L.C. because, as stated hereinabove, no such entity exists.

6.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal has been filed with the Clerk of the District Court for the 404th Judicial District, Cameron County, Texas, in Cause Number 2002-12-5078-G, <u>Silva et al. v. Airpax Corporation, L.L.C., et al</u>. Also pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal has been mailed to Catherine Smith, attorney of record for the Plaintiffs, at the addresses shown on the attached certificate of mailing.

7.      Trial of this matter has not been set.

WHEREFORE, pursuant to this Notice of Removal and 28 U.S.C. § 1441, Defendant Airpax Corporation, L.L.P. respectfully requests that this Court assume jurisdiction of this case for all purposes.

Dated this 29th day of _____, 2003.

                          Respectfully submitted,


                          F. Edward Barker
                          State Bar No. 01741000
                          Federal I.D. No. 970
                          Attorney-in-Charge for Defendant
                          Airpax Corporation, L.L.C.
                          Tower II, Suite 1200
                          555 N. Carancahua St.
                          Corpus Christi, Texas 78478
                          (361) 881-9217; FAX: (361) 882-6590

                          OF COUNSEL:
                          BARKER, LEON, FANCHER & MATTHYS,
                          L.L.P.

## CERTIFICATE OF SERVICE

I certify that on the 27th day of January, 2003, a complete and correct copy of **Defendant Airpax Corporation, L.L.C.'s Notice of Removal** was served on each party by delivery to the following attorney of record in the manner indicated below:

**CM/RRR No. 7002 2410 0003 6795 1896**
Ms. Catherine W. Smith
LAW OFFICE OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539

F. Edward Barker

---

CAUSE NO. _2002-12-5078-G_

| | | |
|---|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY | § | IN THE DISTRICT COURT |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF MARIA SANTOS GARCIA | § | FILED _12:30_ O'CLOCK _____ Q __ M |
| BANDA, DECEASED; JESUS MORENO | § | AURORA DE LA GARZA DIST. CLERK |
| GARCIA, DORA MORENO GARCIA, | § | |
| BARBARA MORENO GARCIA, ADVIENTA | § | DEC 19 2002 |
| MORENO GARCIA PRADO, SABINA | § | |
| MORENO GARCIA, MONICA MORENO | § | DISTRICT COURT OF CAMERON COUNTY, TEXAS |
| GARCIA, SOCORRO MORENO GARCIA | § | _12  Sotelo_ DEPUTY |
| MENDOZA, JUAN PABLO MORENO | § | |
| GARCIA, MARIA SANTOS MORENO | § | CAMERON COUNTY, TEXAS |
| GARCIA, VALERIE MORENO GARCIA, | § | |
| *Plaintiffs* | § | |
| VS. | § | |
| | § | |
| AIRPAX ACQUISITION, L.L.C., AIRPAX | § | |
| CORPORATION, L.L., AND AIRPAX DE | § | |
| MEXICO, S.A., | § | _404th_ JUDICIAL DISTRICT |
| *Defendants* | § | |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, JESUS MORENO SILVA, Individually and as Representative of the Estate of MARIA SANTOS GARCIA BANDA, Deceased, JESUS MORENO GARCIA, DORA MORENO GARCIA, BARBARA MORENO GARCIA, ADVIENTA MORENO GARCIA PRADO, SABINA MORENO GARCIA, MONICA MORENO GARCIA, SOCORRO MORENO GARCIA MENDOZA, JUAN PABLO MORENO GARCIA, MARIA SANTOS MORENO GARCIA, and VALERIE MORENO GARCIA (hereinafter referred to as "Plaintiffs"), complaining of AIRPAX ACQUISITION, L.L.C., AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A., and in support thereof would respectfully show the following:

### I.
### DISCOVERY CONTROL PLAN

Plaintiffs intend to conduct discovery under Level 3 Discovery Control Plan pursuant to Tex. R. of Civ. P. 190.

### II.
### PARTIES

A.    Plaintiff JESUS MORENO SILVA is the surviving spouse of MARIA SANTOS GARCIA BANDA, Deceased, and a resident of San Luis Potosi, San Luis Potosi, Mexico.

1

B.      Plaintiff JESUS MORENO GARCIA is a surviving adult son of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

C.      Plaintiff DORA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

D.      Plaintiff BARBARA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

E.      Plaintiff ADVIENTA MORENO GARCIA PRADO is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

F.      Plaintiff SABINA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

G.      Plaintiff MONICA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

H.      Plaintiff SOCORRO MORENO GARCIA MENDOZA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

I.      Plaintiff JUAN PABLO MORENO GARCIA is a surviving adult son of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

J.      Plaintiff MARIA SANTOS MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

K.      Plaintiff VALERIE MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

L.      Defendant AIRPAX ACQUISITION, L.L.C., is a Delaware corporation authorized to do business in the state of Texas with its principal place of business in Brownsville, Cameron County, Texas, and may be served with process through its registered agent Mr. David Lopez at 468 Regal Row, Brownsville, Texas 78521. Service is hereby requested on this Defendant pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure, by Certified Mail, Return Receipt Requested.

L.      Defendant AIRPAX CORPORATION, L.L.C. is a Maryland Corporation authorized to do business in the state of Texas and may be served with process through its registered agent Corporation Service Company at 800 Brazos, Suite 750, Austin, Texas 78701. Service is hereby requested on this Defendant pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure, by Certified Mail, Return Receipt Requested.

M.     Defendant AIRPAX DE MEXICO, S.A., is a twin plant to Airpax Corporation, L.L.C. and Airpax Acquisition, L.L.C. with offices located at Del Obrero, Cp 87316, Matamoros, Tamps., Mexico. This Defendant is connected directly to and does business through Defendant Airpax Corporation, L.L.C. of Brownsville, Cameron County, Texas. This Defendant may be served with process by serving Mr. David Lopez at 468 Regal Row, Brownsville, Texas 78521. Service is hereby requested on this Defendant pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure, by Certified Mail, Return Receipt Requested.

III.

## VENUE & JURISDICTION

This Court has jurisdiction of this matter in that Plaintiffs are seeking damages within the jurisdictional limits of the Court. Venue is appropriate in Cameron County, Texas pursuant to Tex.Civ.P.Rem.C. §§15.001 and 15.002 and Tex.Civ.P.Rem.C. §71.031. Jurisdiction is appropriate in Cameron County State District Court because Cameron County and the state of Texas are the location of the principal place of business of AIRPAX CORPORATION, the owner of the vehicle and employer (through its Mexican "twin") of the driver involved in this tragic accident. Defendant AIRPAX DE MEXICO, S.A., the Mexican "twin" to Defendant AIRPAX CORPORATION is a Mexican citizen as are the Plaintiffs and their decedent MARIA SANTOS GARCIA BANDA. This case is not removable under 28 U.S.C. §1441 because Defendant AIRPAX CORPORATION, L.L.C. has its principal place of business in Cameron County, Texas, and this Defendant is properly joined and served. Under 28 U.S.C. §1332(c)(1) it is a citizen of Texas. There is no diversity of citizenship under 28 U.S.C. §1332 and *Giannokos v. M/V Bravo Trader*, 762 F2d 1295 (5th Cir. 1985) due to the presence of aliens on both sides of the controversy.

IV.

## FACTS

1.     On or about May 3, 2001, MARIA SANTOS GARCIA BANDA, Deceased, accompanied by her sister Maria Petra Garcia de Banda, Deceased, were pedestrians on M. C. Lerma Morelos and Gonzalez Blvd., Matamoros, Tamaulipas, Mexico and were attempting to cross the street.

2.     On that occasion, Magdaleno Alcocer Muñiz, who, based on the police accident report, was an employee of Defendants, was driving a 1986 trailer truck owned by AIRPAX ACQUISITION, L.L.C. of Brownsville, Texas. AIRPAX DE MEXICO, S.A. is a part of a twin

3

plant operation of AIRPAX CORPORATION, L.L.C. of Brownsville, Texas, the owner of the truck involved in this accident and an employer of Mr. Muñiz.  The truck in question bears USDOT #669800; Texas license plate number: TX 2 AL 309.      Defendants AIRPAX ACQUISITION, L.L.C, AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A. are liable for the acts and omissions of Magdaleno Alcocer Muñiz under the doctrines of agency and respondeat superior.  AIRPAX ACQUISITION, L.L.C. and AIRPAX DE MEXICO, S.A. operate under an agreement among their members toward a common purpose and for mutual financial interests, with equal right to control the enterprise.  As such, they are each responsible for the acts of the others.

3.      On the occasion in question, the driver failed to exercise ordinary care in the operation of the truck he was driving, and such failure brought about the tragic death of MARIA SANTOS GARCIA BANDA and her sister.

4.      This case is brought pursuant to the Texas Wrongful Death and Survival Statutes as found in Chapter 71, Tex.Civ.P.Rem.C.

5.      On the occasion in question Magdaleno Alcocer Muñiz did not hold a valid driver's license, either of any state in the United States or in Mexico, and was therefore operating the truck in question illegally.  Magdaleno Alcocer Muñiz was the driver and agent of Defendants, and the death of MARIA SANTOS GARCIA BANDA was brought about by the wrongful acts, carelessness, and lack of skill of Defendants and their agent and employee Magdaleno Alcocer Muñiz, and, therefore, these Defendants are liable for damages arising from the wrongful death of MARIA SANTOS GARCIA BANDA.

6.      These Defendants, together, and each of them, were responsible to assure that those whom they placed behind the wheel of heavy trucks, specifically this truck, possessed sufficient skill and knowledge of applicable traffic laws as well as driving skills to operate the equipment safely and without causing undue harm or injury to others.  They failed to do so, and this failure was the proximate cause of the injuries to Plaintiffs and the wrongful death of MARIA SANTOS GARCIA BANDA.

V.

**NEGLIGENCE**

7.      Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

8.      All Defendants breached their duties in one or more of the following respects:

As to Defendant AIRPAX ACQUSITION, L.L.C.:

    a.    Failing to assure that all operators of its trucks, either in the United States or elsewhere, were licensed, trained, and skilled drivers familiar with applicable traffic laws and with training and skills sufficient to safely and efficiently operate heavy trucks;

    b.    Failing to properly train drivers;

    c.    Failing to set forth appropriate rules and regulations pertaining to the hiring of drivers and placing such drivers behind the wheel of its trucks;

    d.    Entrusting the use of the truck to Magdaleno Alcocer Muñiz without ensuring his level of skill was sufficient to safely operate the truck;

    e.    Entrusting Magdaleno Alcocer Muñiz without ensuring he was licensed to operate this truck; and

    f.    Failing to impose and enforce hiring requirements on its "twin plant" operation which would ensure that only properly licensed and qualified drivers were employed to operate its trucks.

As to Defendant AIRPAX CORPORATION, L.L.C.:

    a.    Failing to assure that all operators of its trucks, either in the United States or elsewhere, were licensed, trained, and skilled drivers familiar with applicable traffic laws and with training and skills sufficient to safely and efficiently operate heavy trucks;

    b.    Failing to properly train drivers;

    c.    Failing to set forth appropriate rules and regulations pertaining to the hiring of drivers and placing such drivers behind the wheel of its trucks;

    d.    Entrusting the use of the truck to Magdaleno Alcocer Muñiz without ensuring his level of skill was sufficient to safely operate the truck;

    e.    Entrusting Magdaleno Alcocer Muñiz without ensuring he was licensed to operate this truck; and

    f.    Failing to impose and enforce hiring requirements on its "twin plant" operation which would ensure that only properly licensed and qualified drivers were employed to operate its trucks.

As to Defendant AIRPAX DE MEXICO, S.A., by and through Defendants Airpax Acquisition, L.L.C. and Airpax Corporation, L.L.C.:

    a.    Failing to assure that all operators of its trucks, either in the United States or elsewhere, were licensed, trained, and skilled drivers familiar with applicable traffic laws and with training and skills sufficient to safely and efficiently operate heavy trucks;

    b.    Failing to properly train drivers;

    c.    Failing to set forth appropriate rules and regulations pertaining to the hiring of drivers and placing such drivers behind the wheel of its trucks;

    d.    Entrusting the use of the truck to Magdaleno Alcocer Muñiz without ensuring his level of skill was sufficient to safely operate the truck; and

    e.    Entrusting Magdaleno Alcocer Muñiz without ensuring he was licensed to operate this truck.

The acts and omissions of these Defendants were the proximate cause of the injuries and damages suffered by Plaintiffs and complained of herein.

## VI.

9.    Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

10.    On the occasion in question Magdaleno Alcocer Muñiz was negligent in the operation of the truck which struck MARIA SANTOS GARCIA BANDA. He did not hold a valid driver's license to operate the truck he was driving, which is a violation of the penal statutes of Texas and Mexico. Magdaleno Alcocer Muñiz failed to use reasonable care in the operation of the subject truck, failed to be vigilant for the presence of pedestrians, failed to timely apply his brakes, moved his truck forward while pedestrians were in its path of travel, and failed to assure a safe clearance between the truck and passengers before moving the truck forward. All such conduct was the proximate cause of the injuries and damages complained of herein and the death of MARIA SANTOS GARCIA BANDA. All such conduct was attributable to Defendants AIRPAX ACQUISITION, L.L.C, AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A. under the doctrine of agency and respondeat superior.

11.    On the occasion in question, Magdaleno Alcocer Muñiz was operating the truck on the occasion in question with the full authority, permission, and approval of Defendants. He had been hired by Defendants to operate the truck for them and on their behalf, and when he was arrested for the death of MARIA SANTOS GARCIA BANDA, Defendants paid

his fine to obtain his release from jail. As such, Defendants are responsible for his conduct as his principal and his employer fully as if the Defendants themselves committed his acts and omissions.

## VII.

## DAMAGES

12.    Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

13.    As a proximate result of the conduct of Defendants' negligence, MARIA SANTOS GARCIA BANDA, Deceased, suffered severe, debilitating, and painful injuries and, ultimately, death as a result of the accident which occurred on May 3, 2001.

14.    In addition to the physical pain and mental and emotional suffering MARIA SANTOS GARCIA BANDA suffered prior to her death, Plaintiff JESUS MORENO SILVA as Representative of the Estate of MARIA SANTOS GARCIA BANDA, Deceased, incurred reasonable and necessary funeral and burial expenses.

15.    Plaintiff JESUS MORENO SILVA, Individually, is the husband of  MARIA SANTOS GARCIA BANDA, Deceased.  As a result of the injuries and wrongful death of his wife, Plaintiff has suffered mental and emotional anguish, pain and suffering, has suffered loss of society, companionship and consortium, grief, bereavement, damage to the family relationship, and the loss of care, maintenance, support, advice, counsel, contributions of pecuniary value, loss of past, present, and future earnings, and the loss of household services of his spouse.

16.    Plaintiff JESUS MORENO GARCIA, as a result of his mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and  companionship, damage to the family relationship, and  loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which he otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

17.    Plaintiff BARBARA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and  companionship, damage to the family relationship, and  loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

18.    Plaintiff SABINA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and  companionship, damage to the family relationship, and  loss

of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

19.    Plaintiff ADVIENTA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

20.    Plaintiff DORA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

21.    Plaintiff SOCORRO MORENO GARCIA MENDOZA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society  and  companionship, damage to the family relationship, and  loss of care, maintenance  and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

22.    Plaintiff MONICA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

23.    Plaintiff JUAN PABLO MORENO, as a result of his mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which he otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

24.    Plaintiff MARIA SANTOS MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society  and  companionship, damage to the family

relationship, and    loss of care, maintenance    and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

25.    Plaintiff VALERIE MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society  and  companionship, damage to the family relationship, and  loss of care, maintenance  and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

26.    By reason of each and all of the aforementioned acts and omissions of Defendants, Plaintiffs sustained injuries and damages for which they seek recovery from Defendants in an amount in excess of the minimum jurisdictional limits of the Court.

## VIII.

## EXEMPLARY DAMAGES

27.    Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

28.    Defendants AIRPAX ACQUISITION, L.L.C., AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A.'s conduct amounted to malice as that term is defined in Tex.Civ.P.&Rem.C., §41.0017(b)(1) in that under the circumstances of Defendants' business, its acts and omissions created an extreme degree of risk considering the probability and magnitude of the potential harm to others, and of which Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscience indifference to the rights, safety and welfare of others.  Defendants' conduct, when viewed objectively from its standpoint at the time of the occurrence, involved an extreme degree of risk considering the probability and magnitude of the potential harm to pedestrians such as MARIA SANTOS GARCIA BANDA, Deceased.   These Defendants also are guilty of gross neglect.  Plaintiffs are entitled to recover exemplary damages against these Defendants without limitation, as may be found by the trier of fact.  At the very least, Plaintiffs are entitled to recover exemplary damages as described in Tex.Civ.P.&Rem.C.

## IX.

## JURY DEMAND

29.    Plaintiffs hereby make request for a jury trial in this cause pursuant to  Rule 216  of the Texas Rules of Civil Procedure and has deposited with the District  Clerk of

Cameron County Texas the requisite jury fee of THIRTY DOLLARS AND NO/100THS ($30.00)

## X.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs JESUS MORENO SILVA, Individually and as Representative of the Estate of MARIA SANTOS GARCIA BANDA, Deceased, JESUS MORENO GARCIA, DORA MORENO GARCIA, BARBARA MORENO GARCIA, ADVIENTA MORENO GARCIA PRADO, SABINA MORENO GARCIA, MONICA MORENO GARCIA, SOCORRO MORENO GARCIA MENDOZA, JUAN PABLO MORENO GARCIA, MARIA SANTOS MORENO GARCIA, VALERIE MORENO GARCIA respectfully pray that Defendants AIRPAX ACQUISITION, L.L.C., AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A. be cited to appear and answer, and that Plaintiffs have judgment against Defendants, jointly and severally for the following:

a.  Actual damages as alleged herein against Defendants jointly and severally in an amount within the jurisdictional limits of the Court;

b.  Pre-judgment interest at the highest legal rate;

c.  Exemplary damages as to each Defendant as allowed by law;

d.  Interest on the judgment at the highest legal rate;

e.  Costs of suit;

f.  All other relief in law and in equity to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539
(956) 383-7441 and (956) 381-0825 (Telefax)

By: _____
CATHERINE W. SMITH
State Bar No. 18547080
RAMON GARCIA
State Bar No. 07641800

ATTORNEYS FOR PLAINTIFFS

10

CAUSE NO. 2002-12-5078-G

| | | |
|---|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY | § | IN THE DISTRICT COURT |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF MARIA SANTOS GARCIA | § | |
| BANDA, DECEASED,   JESUS MORENO | § | |
| GARCIA, DORA MORENO GARCIA, | § | CAMERON COUNTY, TEXAS |
| BARBARA MORENO GARCIA, ADVIENTA, | § | |
| MORENO GARCIA PRADO, SABINA | § | |
| MORENO GARCIA, MONICA MORENO | § | |
| GARCIA, SOCORRO MORENO GARCIA | § | |
| MENDOZA, JUAN PABLO MORENO | § | 404TH JUDICIAL DISTRICT |
| GARCIA, MARIA SANTOS MORENO | § | |
| GARCIA , VALERIE MORENO GARCIA | § | |
| | § | |
| VS. | § | |
| | § | |
| AIRPAX ACQUISITION, L.L.C., | § | |
| AIRPAX CORPORATION, L.L. AND | § | 404TH JUDICIAL DISTRICT COURT |
| AIPAX DE MEXICO, S.A. | § | |

## AFFIDAVIT OF MICHAEL V. RABASCA

| | |
|---|---|
| COUNTY OF DORCHESTER | § |
| | § |
| STATE OF MARYLAND | § |

BEFORE ME, the undersigned authority, personally appeared Michael Rabasca, who, being by me duly sworn, deposed and said:

1.    My name is Michael Rabasca.  I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated in it.

2.    I am the Chief Financial Officer of Airpax Corporation, L.L.C., and by virtue of both my position within the company as well as length of employment with the company, I have personal knowledge of the following facts:

a)      In February of 1999, Airpax Corporation's management accomplished

a buy-out of all of the stock in Airpax Corporation from Philips Electronics North America

Corporation and formed a new corporation entitled Airpax Corporation, L.L.C.. At that time,

Philips North American Electronics Corporation ceased to have any ownership interest,

control or influence over Airpax Corporation. The "Airpax Corporation" which had been a

subsidiary of Philips North American Corporation was dissolved at that time and the only

remaining survivor of the Airpax entities is the present survivor, Airpax Corporation, L.L.C.

3.      As stated, I am the  the Chief Financial Officer of Airpax Corporation, L.L.C. and as

such I am a custodian of the records attached to this affidavit.

4.  The records attached to this affidavit, consisting of _34_ pages are kept by

Airpax Corporation, L.L.C. in the regular course of its business.  It was the regular course

of that business for an employee or representative of the business with knowledge of the

act, event, condition, or opinion recorded to keep these records or to transmit information

thereof to be included in such records.  The records were made at or near the time of the

act, event, condition, or opinion recorded, or reasonably soon thereafter.  The attached

records are true and correct duplicates of the originals.

5.      Airpax Corporation, L.L.C., is a Delaware Corporation with its principal place

of business in Cambridge, Maryland. Attached hereto and Incorporated by reference are a

Tab A, The LLC Agreement of Airpax Acquisition, L.L.C.,; Tab B, the Certificate of

Formation of Airpax Acquisition, L.L.P.; Tab C, a Certificate of Amendment changing the

name of the Airpax Acquisition to Airpax Corporation, L.L.C.; Tab D, the Certificate of

Incorporation for Electronic Packaging Products, Inc.; Tab E, the Certificate of

Incorporation of Power Protection Products; Inc.; Tab F, the Certificate of Incorporation for

Thermal Sensing Products, Inc., and at Tab G the present ownership chart of the surviving entities.    Per the LLC Agreement, the three Delaware Corporations have been the only owners of Airpax Corporation, L.L.C.

6.    Electronic Packaging Products was sold and no longer has any interest in Airpax Corporation, L.L.C., who is presently wholly co-owned by Power Protection Products, Inc. and Thermal Sensing Products, Inc., two Delaware Corporations.

7.    Airpax Corporation, L.L.C., has a warehouse type facility in Brownsville, Texas to transition component parts into, and out of, our assembling department located in Matamoros, Mexico.  There is no one physically stationed in the Brownsville, Texas Airpax facility with strategic decision making responsibilities of any significance.  The employees in this warehouse are given tactical assignments and procedures to follow.  This is the only facility of Airpax Corporation, L.L.C. located within the entire state of Texas.

8.    The Airpax Corporation, L.L.C. department, located in Matamoros, Mexico is incorporated in Mexico as is required under Mexican law, however, in reality it is considered a mere department within the overall company.  In this regard the Mexican department had issued 7,523,661 shares of stock, all of which except one share is owned by Airpax Corporation, L.L.C., with that lone share being owned by Power Protection Products, Inc., [See Chart attached hereto].  The hiring and firing of all key personnel of Airpax de Mexico is done in Maryland at the home office of Airpax Corporation, L.L.C.,; the day to day activities of Airpax de Mexico is monitored and ultimately controlled by officers of the company in Maryland and indeed, about every other month the Executive Vice President of Airpax Corporation, L.L.C., travels to Airpax de Mexico to perform management onsite and other management duties; Airpax de Mexico owns no production

related assets as all of these assets located in Mexico are owned by Airpax Corporation, L.L.C.; the only asset of substance owned by Airpax de Mexico is the building;  inventory stored at Airpax de Mexico is owned by Airpax Corporation, L.L.C., Airpax de Mexico makes no sales to any other "customers" except Airpax Corporation, L.L.C.; all raw products and inventory sent to Airpax de Mexico are purchased in Maryland at the home office and remain the property of Airpax Corporation, L.L.C., all cash funding for Airpax de Mexico is provided by  Airpax Corporation, L.L.C..  Since Mexico has no third party sales, they are dependent on the US company to fund weekly payroll and fund operating expenses; all local accounting and any local taxes paid as a result of activities conducted by Airpax de Mexico is consolidated with that of Airpax Corporation, L.L.C.  In every way the corporate formality of Airpax de Mexico is ignored by Airpax Corporation, L.L.C. and the Mexico facility is in fact deemed a mere department of Maryland based home office, Airpax Corporation, L.L.C.

Michael V. Rabasca

Sworn to and subscribed before me on this the 24th day of January, 2003.

NOTARY PUBLIC

Printed Name CAROL V. PERRY

My Commission Expires: 4/1/2007

*Schedule II*

## Initial Contributions

| MEMBER | CONTRIBUTION | UNITS |
|---|---|---|
| Power Protection Products, Inc. | $195.00 | 195 |
| Electronic Packaging Products, Inc. | $30.00 | 30 |
| Thermal Sensing Products, Inc. | $75.00 | 75 |

## Membership Percentages

| MEMBER | MEMBERSHIP PERCENTAGE AS OF DECEMBER 22ᴺᴰ, 1998 |
|---|---|
| Power Protection Products, Inc. | 65% |
| Electronic Packaging Products, Inc. | 10% |
| Thermal Sensing Products, Inc. | 25% |

FINAL

### AMENDED AND RESTATED
### LIMITED LIABILITY COMPANY AGREEMENT
### OF
### AIRPAX ACQUISITION, LLC

This Amended and Restated Limited Liability Company Agreement (this "*Agreement*") of Airpax Acquisition, LLC is entered into by and among Power Protection Products, Inc., a Delaware corporation, Electronic Packaging Products, Inc., a Delaware corporation and Thermal Sensing Products, Inc., a Delaware corporation, as members (the "*Members*").

The Members hereby form a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 *Del. C.* §18-101, *et seq.*), as amended from time to time (the "*Act*"), and hereby agree as follows:

1.  *Name and Address.* The name of the limited liability company formed hereby is Airpax Acquisition, LLC (the "*Company*"). The mailing address of each of the Members is: c/o Industrial Growth Partners, L.P., 100 Spear Street, Suite 310, San Francisco, CA 94105.

2.  *Purpose.* The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

3.  *Rights and Duties of Managers.*

    (a)  *Management.* The powers of the Company shall be exercised by and under the authority of, and the business and affairs of the Company shall be managed by, the Board of Managers (the "*Managers*" or "*Board*"). In addition to the powers and authorities expressly conferred by this Agreement upon the Managers, the Managers may exercise all such powers of the Company and do all such lawful acts and things as are not directed or required to be exercised or done by the Members by the Act or this Agreement. including, but not limited to, contracting for or incurring debts, liabilities and other obligations on behalf of the Company.

    (b)  *Number and Qualifications.* The number of members of the Board shall be five. The number of members of the Board may be increased by resolution of the Board. Industrial Growth Partners, LP ("*IGP*") shall be entitled to designate four members of the Board (each an "*IGP Manager*"). and the fifth member of the Board shall be the chief executive officer of Airpax Acquisition, LLC, a Delaware limited liability company (the "*Non-IGP Manager*").

(c)     *Board.* The following individuals are hereby elected to serve as the members of the Board:

> R. Patrick Forster
> Michael H. Beaumont
> Gottfried P. Tittiger
> Robert F. X. Burlinson
> Dennis K. Karr

Each such individual, or any other Manager, shall hold office until he or she dies, resigns or is removed by action of the Members.

(d)     *Vacancy.* In the event that any Manager designated hereunder for any reason ceases to serve as a member of the Board during such Manager's term of office, the resulting vacancy on the Board shall be filled by a representative designated by IGP.

(e)     *Removal.* Any Manager may be removed from the Board (with or without cause) at the written request of IGP but only upon such written request and under no other circumstances.

(f)     *Meetings of Managers.* Meetings of the Managers may be held at such time and place either within or without the State of Delaware as shall from time to time be determined by the Managers. Meetings of the Managers may be called by a majority of the Managers on not fewer than five business days' written notice to each Manager.

(g)     *Quorum.* At all meetings of the Managers, the presence of a majority of the Managers shall be necessary and sufficient to constitute a quorum for the transaction of business unless a greater number is required by law. The act of a majority of the Managers shall be the act of the Managers, except as otherwise provided by law or this Agreement. If a quorum shall not be present at any meeting of the Managers, the Managers present at the meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. A Manager may vote or be present at a meeting either in person or by proxy.

(h)     *Attendance and Waiver of Notice.* Attendance of a Manager at any meeting shall constitute a waiver of notice of such meeting, except where a Manager attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Managers need be specified in the notice or waiver of notice of such meeting.

(i)     *Compensation of Managers.* Managers, as such, shall not receive any stated salary for their services. A fixed sum and expenses of attendance, if any, may be allowed for attendance at each regular or special meeting of the Managers, provided that nothing contained in this Agreement shall be construed to preclude any Manager from serving the Company in any other capacity and receiving compensation for such service.

(j) *Officers*. The Managers may, from time to time, designate one or more persons to be officers of the Company. No officer need be a Member or a Manager. Any officers so designated shall have such authority and perform such duties as the Managers may, from time to time, delegate to them. The Managers may assign titles to particular officers, including, without limitation, chief executive officer, president, vice president, chief operating officer, secretary, assistant secretary, treasurer and assistant treasurer. Each officer shall hold office until his or her successor shall be duly designated and shall qualify or until his or her death or until he or she shall resign or shall have been removed. Any number of offices may be held by the same person. The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed from time to time by the Managers. Any officer may be removed as such, either with or without cause, by the Managers whenever in their judgment the best interests of the Company will be served thereby. Any vacancy occurring in any office of the Company may be filled by the Managers. The officers and their respective titles are identified on the attached *Schedule I*.

(k) *Committees of Managers*.

(i) *Creation*. The Managers may, by resolution, designate from among the Managers one or more committees (including, but not limited to, an Audit Committee and a Compensation Committee), each of which shall be comprised of one or more Managers, and may designate one or more of the Managers as alternate members of any committee, who may, subject to any limitations imposed by the Managers, replace absent or disqualified Managers at any meeting of that committee. Any such committee, to the extent provided in such resolution, shall have and may exercise all of the authority of the Managers, subject to the limitations set forth in the Act or in the establishment of the committee. Any members thereof may be removed by a majority of the Managers. Unless the resolution designating a particular committee or this Agreement expressly so provides, a committee of the Managers shall not have the authority to authorize or make a distribution of Company cash or property to the Members or to authorize the issuance of interests in the Company.

(ii) *Limitation of Authority*. No committee of the Managers shall have the authority of the Managers in reference to:

(A) amending this Agreement, except that a committee may, to the extent provided in the resolution designating that committee or in this Agreement, exercise the authority of the Managers provided in this Agreement to establish the relative rights and preferences of the membership interests of any class or series;

(3) approving a plan of merger of the Company or the sale of all or substantially all of the assets of the Company;

(C) recommending to the Members a voluntary dissolution of the Company or a revocation thereof;

(D) filling vacancies in the Managers;

(E)     fixing the compensation of any member or alternate members of such committee; or

(F)     altering or repealing any resolution of the Managers that by its terms provides that it shall not be so amendable or repealable.

(l)     *Issuances of Units.*  The Managers shall have sole and complete discretion in determining whether to issue a fractional part of the membership interests of the Company ("*Units*"), the number of Units to be issued at any particular time, the purchase price for any Units issued, and all other terms and conditions governing any Units or the issuance thereof.  The purchase price for any Unit shall be paid to the Company in cash or cash equivalents, or if approved by the Managers, any other form of consideration.

(m)     *Actions Without a Meeting and Telephone Meetings.*  Notwithstanding any provision contained in this Agreement, any action of the Managers may be taken by written consent without a meeting, or any meeting thereof may be held by means of a conference telephone connection.  Any such action taken by the Managers without a meeting shall be effective only if the written consent or consents are in writing, set forth the action so taken, are signed by a majority of the Managers, or such greater number of Managers that would be necessary to take such action at a meeting of the Managers and delivered to the Non-IGP Manager.

(n)     *Indemnification.*  To the fullest extent permitted by the Act, a Manager shall not be liable to the Company or any Member for monetary damages for a breach of duty to the Company or any Member.  The Managers shall be indemnified and held harmless by the Company, including advancement of expenses, but only to the extent that the Company's assets are sufficient therefor, from and against all claims, liabilities. and expenses arising out of any management of Company affairs (but excluding those caused by the gross negligence or willful misconduct of the Manager), to the fullest extent permitted by. but subject to all limitations and requirements imposed by. the Act.  These indemnification rights are in addition to any rights that the Managers may have against third parties.

4.     *Meetings of Members.*

(a)     *Actions Without a Meeting and Telephone Meetings.*  Notwithstanding any provision contained in this Agreement, any action of the Members may be taken by written consent without a meeting, or any meeting thereof may be held by means of a conference telephone connection.  Any such action taken by the Members without a meeting shall be effective only if the written consent or consents are in writing. set forth the action so taken, and are signed by Members that own Units which represent more than 50% of the Units then outstanding.

(b)     *Limitation of Liability.*  Except as otherwise provided in the Act or in this Agreement, no Member will be obligated personally for any debt, obligation or liability of the Company or of any other Member by reason of being a Member.  Except as otherwise provided in the Act, by law or expressly in this Agreement. no Member (in such capacity) will have any fiduciary or other duty to another Member with respect to the business and affairs of the Company.

No Member will have any responsibility to restore any negative balance in its Capital Account or to contribute to or in respect of the liabilities or obligations of the Company or return distributions made by the Company except as required by the Act or other applicable law.

5.    *Elections and Reports.*

(a)    *Generally.*  The Company will keep appropriate books and records with respect to the Company's business, including all books and records necessary to provide any information, lists and copies of documents required to be provided pursuant to Section 5(b) or pursuant to applicable laws.

(b)    *Reports.*  The Company will use reasonable efforts to deliver or cause to be delivered, by March 31 of each year, to each person who was a Unitholder at any time during the previous Fiscal Year, all information necessary for the preparation of such person's United States federal income tax returns and any state, local and foreign income tax returns which such person is required to file as a result of the Company being engaged in a trade or business within such state, local or foreign jurisdiction, including a statement showing such person's share of income, gains, losses, deductions and credits for such year for United States federal income tax purposes (and, if applicable, state, local or foreign income tax purposes) and the amount of any Distributions made to or for the account of such person. Upon the written request of any such person made not later than 30 days after the end of each Fiscal Year and at the sole expense of such person, the Company will use reasonable efforts to deliver or cause to be delivered any additional information necessary for the preparation of any state, local and foreign income tax returns which must be filed by such person.

(c)    *Separate Financial Statements.*  The Company shall prepare and deliver or cause to be delivered, by March 31 of each year, to each person who was a Unitholder during the previous Fiscal Year audited income statements showing PPP Profits and Losses, EPP Profits and Losses and TSP Profits and Losses.

(d)    *Tax Elections.*  The taxable year of the Company will be the Fiscal Year, unless the Tax Matters Partner determines otherwise in compliance with applicable laws. The Tax Matters Partner will determine whether to make or revoke any available election pursuant to the Code. Each Unitholder will upon request supply the information necessary to give proper effect to any such election.

(e)    *Tax Controversies.*  Power Protection Products, Inc. is designated the "Tax Matters Partner" (as defined in Code §6231) for the Company and is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities. including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. Each Unitholder agrees to cooperate with the Tax Matters Partner and to do or refrain from doing any or all things reasonably requested by the Tax Matters Partner with respect to the conduct of such proceedings. Subject to the foregoing proviso, the Tax Matters Partner will have sole discretion to determine whether the Company (either in its own behalf or on behalf of the Unitholders) will contest or continue to contest any tax deficiencies assessed or proposed to be assessed by any taxing

authority. Any deficiency for taxes imposed on any Unitholder (including penalties, additions to tax or interest imposed with respect to such taxes) will be paid by such Unitholder.

6.   *Dissolution.* The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following (a) the written consent of all of the Members or (b) the death, retirement, resignation, expulsion, insolvency, bankruptcy or dissolution of a Member or the occurrence of any other event which terminates the continued membership of a Member in the Company unless the business of the Company is continued by consent of the remaining Member(s) within 90 days following the occurrence of any such event or (c) the entry of a decree of judicial dissolution under §18-802 of the Act.

7.   *Capital Contributions.* The initial Members made Capital Contributions as set forth on *Schedule II.* The name and Unit ownership of each Member are set forth on the attached *Schedule II.* The Board may cause the Company to accept additional Capital Contributions in proportion to their Membership Percentages (as set forth on *Schedule II* hereto) from time to time. The Board may amend such *Schedule II* from time to time to reflect changes in such names, addresses, ownership and/or Capital Contributions, including by reason of the admission or withdrawal of any Member or the transfer of any Unit.

8.   *Capital Accounts.*

(a)   *Generally.*   The Company will maintain a separate Capital Account for each Unitholder according to the rules of Treasury Regulation §1.704-1(b)(2)(iv). For this purpose, the Company may, upon the occurrence of the events specified in Treasury Regulation §1.704-1(b)(2)(iv)(f), increase or decrease the Capital Accounts in accordance with the rules of such regulation and Treasury Regulation §1.704-1(b)(2)(iv)(g) to reflect a revaluation of Company property.

(b)   *Method of Determining Profit and Loss.*   For purposes of computing the amount of any item of Company income, gain, loss or deduction to be allocated pursuant to Section 9 and to be reflected in the Capital Accounts, the determination, recognition and classification of any such item will be the same as its determination, recognition and classification for federal income tax purposes (including any method of depreciation, cost recovery or amortization used for this purpose); *provided* that:

(i)   the computation of all items of income, gain, loss and deduction will include tax-exempt income and those items described in Code §705(a)(1)(B), Code §705(a)(2)(B) and Treasury Regulation §1.704-1(b)(2)(iv)(i). without regard to the fact that such items are not includable in gross income or are not deductible for federal income tax purposes;

(ii)   if the Book Value of any Company property is adjusted pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(e) or (f). the amount of such adjustment will be taken into account as gain or loss from the disposition of such property;

(iii)    items of income, gain, loss or deduction attributable to the disposition of Company property having a Book Value that differs from its adjusted basis for tax purposes will be computed by reference to the Book Value of such property;

(iv)    items of depreciation, amortization and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted basis for tax purposes will be computed by reference to the property's Book Value in accordance with Treasury Regulation §1.704-1(b)(2)(iv)(g); and

(v)    to the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code §§ 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts will be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis).

(c)    *No Interest.*    No interest will be paid by the Company on Capital Contributions or on balances in Capital Accounts.

(d)    *No Withdrawal.*  No person will be entitled to withdraw any part of a Capital Contribution or Capital Account or to receive any Distribution from the Company, except as expressly provided in this Agreement.

9.    *Allocations.*

(a)    *Regular Allocations.*

(i)    *Generally.*    Except as otherwise provided in Section 9(b), items of Profit and Loss for any Fiscal Year or any other period (as the Board may determine) will be allocated among the Unitholders in such manner that, as of the end of such Fiscal Year or other period, (A) all PPP Profits and Losses shall be allocated to PPP, (B) all EPP Profits and Losses shall be allocated to EPP, and (C) all TSP Profits and Losses shall be allocated to TSP.

(ii)    *Allocation for Net Profit Year.*    For purposes of this Section 9(a), subject to Section 9(a)(iv), if Profits exceed Losses for a Fiscal Year or other period, then (A) Losses will first be allocated to Unitholders whose Capital Accounts are to be reduced as a result of the allocations under Section 9(a)(i), in amounts equal to the respective amounts by which such Capital Accounts are to be so reduced, and (B) Profits and any remaining Losses will be allocated to Unitholders whose Capital Accounts are to be increased as a result of the allocations under Section 9(a)(i), in the proportion that the amounts of the increases to be so effected in each such Unitholder's respective Capital Accounts bears to the aggregate amount of the increase to be effected in all such Unitholders' Capital Accounts as a result of the allocations under Section 9(a)(i).

(iii)    *Allocation for Net Loss Year.*    For purposes of this Section 9(a), subject to Section 9(a)(iv), if Losses exceed Profits for a Fiscal Year or other period, then (A) Profits will first be allocated to Unitholders whose Capital Accounts are to be increased as a result of the

allocations under Section 9(a)(i), in amounts equal to the respective amounts by which such Capital Accounts are to be so increased, and (B) Losses and any remaining Profits will be allocated to Unitholders whose Capital Accounts are to be reduced as a result of the allocations under Section 9(a)(i), in the proportion that the amounts of the reductions to be effected in each such Unitholder's respective Capital Accounts bears to the aggregate amount of the reduction to be so effected in all such Unitholders' Capital Accounts as a result of the allocations under Section 9(a)(i).

(iv)     *Negative Capital Account Balances.*  If all items of Profit for a Fiscal Year or other period have been allocated in accordance with Section 9(a)(i) and there remain items of Loss to be allocated, then such items of Loss will be allocated to the Unitholders pro rata according to the number of Units held by each of them.  If, prior to making any allocation of items of Profit or Loss for any Fiscal Year or other period, any Unitholder has a negative Capital Account balance, then items of Profit will be allocated to all such Unitholders, pro rata according to the amounts by which their respective Capital Account balances are less then zero, until no Unitholder has a negative Capital Account balance.

(b)     *Special Allocations.*

(i)     *Nonrecourse Debt.*  Losses attributable to a partner nonrecourse debt (as defined in Treasury Regulation §1.704-2(b)(4)) will be allocated in the manner required by Treasury Regulation §1.704-2(i)).  If there is a net decrease during a Fiscal Year in partner nonrecourse debt minimum gain (as defined in Treasury Regulation §1.704-2(i)(3)), then Profits for such Fiscal Year (and, if necessary, for subsequent Fiscal Years) will be allocated to the Unitholders in the amounts and of such character as determined according to, and subject to the exceptions contained in, Treasury Regulation §1.704-2(i)(4).

(ii)     *Minimum Gain Chargeback.*  Except as otherwise provided in Section 9(b)(i), if there is a net decrease in the Minimum Gain during any Fiscal Year, then each Unitholder will be allocated Profits for such Fiscal Year (and, if necessary, for subsequent Fiscal Years) in the amounts and of such character as determined according to, and subject to the exceptions contained in, Treasury Regulation § 1.704-2(f).  This Section 9(b)(ii) is intended to be a minimum gain chargeback provision that complies with the requirements of Treasury Regulation §1.704-2(f), and will be interpreted in a manner consistent with such intention.

(iii)     *Qualified Income Offset.*  If any Unitholder who unexpectedly receives an adjustment, allocation, or distribution described in Treasury Regulation §1.704-1(b)(2)(ii)(d)(4), (5), and (6) has an Adjusted Capital Account Deficit as of the end of any Fiscal Year, computed after the application of Sections 9(b)(i) and 9(b)(ii) but before the application of any other provision of Section 9(a) or Section 9(b), then Profits for such Fiscal Year will be allocated to such Unitholder in proportion to, and to the extent of, such Adjusted Capital Account Deficit.  This Section 9(b)(iii) is intended to be a qualified income offset provision as described in Treasury Regulation §1.704-1(b)(2)(ii)(d) and will be interpreted in a manner consistent with such intention.

(iv)     *Adjustment of Tax Basis.*  Profits and Losses described in Section 8(b)(v) will be allocated in a manner consistent with the manner that the adjustments to the

Capita. Accounts are required to be made pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(j), (k) and (m).

(v)    *Transaction with Unitholder.* If, and to the extent that, any Unitholder is deemed to recognize any item of income, gain, loss, deduction or credit as a result of any transaction between such Unitholder and the Company pursuant to any of Code §§ 1272-1274, 7872, 483, 482 and 83 or any similar provision now or hereafter in effect, and the Tax Matters Partner determines that any corresponding Profit or Loss of the Company shall be allocated to the Unitholder who recognized such item in order to reflect the Unitholders' economic interests in the Company, then the Company shall so allocate such Profit or Loss.

(c)    *Tax Allocations.*

(i)    *Generally.* The income, gains, losses, deductions and credits of the Company will be allocated, for federal, state and local income tax purposes, among the Unitholders in accordance with the allocation of such income, gains, losses, deductions and credits among the Unitholders for computing their Capital Accounts, *except that* if any such allocation is not permitted by the Code or other applicable law, the Company's subsequent income, gains, losses, deductions and credit will be allocated among the Unitholders so as to reflect as nearly as possible the allocation set forth in this Agreement in computing their Capital Accounts.

(ii)    *Differences Between Book Value and Tax Basis.* Items of Company taxable income, gain, loss and deduction with respect to any property contributed to the capital of the Company will be allocated among the Unitholders in accordance with Code §704(c) so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(iii)    *Adjustments in Book Value.* If the Book Value of any Company asset is adjusted pursuant to Section 8(b), then subsequent allocations of items of taxable income, gain, loss and deduction with respect to such asset will take into account any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code §704(c).

(iv)    *Allocations of Credits and the Like.* Allocations of tax credits, tax credit recapture, and any items related thereto will be allocated to the Unitholders according to their interests in such items as determined by the Tax Matters Partner, taking into account the principles of Treasury Regulation §1.704-1(b)(4)(ii).

(v)    *No Effect on Capital Accounts.* Allocations pursuant to this Section 9(c) are solely for purposes of federal, state and local taxes and will not affect, or in any way be taken into account in computing, any Unitholder's Capital Account or share of Profits, Losses, Distributions or other items pursuant to any provision of this Agreement.

(d)    *Curative Allocations.* If the Tax Matters Partner determines, after consultation with counsel experienced in income tax matters, that the allocation of any item of Company income,

gain, loss, deduction or credit (an "*unallocated item*") is not specified in this Agreement or that the allocation of any item of Company income, gain. loss, deduction or credit (a "*misallocated item*") under .his Agreement is in the Board's reasonable judgment inconsistent with the Unitholders' economic interests in the Company (determined by reference to the general principles of Treasury Regulation §1.704-1(b) and the factors set forth in Treasury Regulation §1.704-1(b)(3)(ii)). then the Company shall allocate such una.located items, or reallocate such misallocated items, to reflect such economic interests; *provided* that no such allocation will have any material effect on the amounts distrib.table to any Unitholder, including the amounts to be distributed upon the complete liquidation of the Company.

10.   *Distributions.*  As and when determined by the Board, the Company may make Distributions at any time or from time to time in the following order:

(a)   *Generally.*

(i)    PPP shall be entitled to receive Distributions of the assets of PPP as reflected on its audited balance sheet.

(ii)   EPP shall be entitled to receive Distributions of the assets of EPP as reflected on its audited balance sheet.

(iii)  TSP shall be entitled to receive Distributions of the assets of TSP as reflected on its audited balance sheet.

(b)   *Tax Distributions.*

The Company will use reasonable efforts, consistent with the Company's operating and capital requirements and the restrictions which may be imposed by any creditor of the Company or applicable law, to make Distributions pursuant to Section 10(a) in amounts such that, prior to April .5 of each calendar year. each Unitholder has received Distributions in aggregate amounts which equal not less than the sum for the immediately preceding Fiscal Year and for all prior Fiscal Years of (i) the amount of Profits allocated to such Member for such Fiscal Years, reduced by the amour.t of Losses allocated to such Unitholder for such Fiscal Years, multiplied by (ii) the maximum marginal tax rate applicable to. corporate taxpayers pursuant to the Code in respect of income recognized during such Fiscal Year. The Company will use reasonable efforts to cause such Distributions to be made in a manner which permits such Unitholders to use the proceeds of such Distributions to make on a timely basis all required estimated payments of income taxes in respect of the Profits so allocated to them.

11.   *Definitions.*  Terms not otherwise defined herein shall have the following meanings.

"*Adjusted Capital Account Deficit*" means. with respect to any Capital Account as of the end of any Fiscal Year or other period, the amount (if any) by which the balance in such Capital Account is less than zero. For this purpose. such person's Capital Account balance will be (a) reduced for any items described in Treasury Regulation §1.704-1(b)(2)(ii)(d)(4), (5), and (6), and (b) increased

for any amount such person is obligated to contribute to the Company or is treated as being so obligated pursuant to Treasury Regulation §1.704-1(b)(2)(ii)(c) (relating to partner liabilities to a partnership) or 1.704-2(g)(1) and 1.704-2(i) (relating to minimum gain).

"*Book Value*" means, with respect to any Company property, the Company's adjusted basis for federal income tax purposes, adjusted from time to time to reflect the adjustments required or permitted by Treasury Regulation §1.704-1(b)(2)(iv)(d)-(g).

"*Capital Account*" means, with respect to any Member, the account maintained for such Member as provided in Section 8.

"*Capital Contribution*" means cash, cash equivalents, promissory obligations or the Fair Market Value of other property a Unitholder contributes or is deemed to have contributed to the Company, whenever made.

"*Code*" means the United States Internal Revenue Code of 1986, as amended and effective as of the date of this Agreement. At the Managing Members discretion, such term will be deemed to include any future amendments to such statutes and any corresponding provisions of succeeding statutes (whether or not such amendment and corresponding provisions are mandatory or discretionary).

"*Distribution*" means each distribution made by the Company to a Unitholder, whether in cash, securities of the Company or other property and whether by liquidating distribution, redemption, repurchase or otherwise; *provided* that none of the following will be a Distribution: (a) any redemption or repurchase by the Company of any Unit from any employee or former employee of the Company or any Subsidiary of the Company or any affiliate of any such employee or former employee which is approved by the Board, (b) any recapitalization or exchange of securities of the Company and (c) any subdivision (by split or otherwise) or any combination (by reverse split or otherwise) of any outstanding Units.

"*EPP*" means Electronic Packaging Products, Inc., a Delaware corporation.

"*EPP Profits and Losses*" means, for each Fiscal Year or part thereof, the Profits and Losses for such Fiscal Year attributable solely to the operations of EPP as reflected on its audited income statement.

"*Fiscal Year*" means the Company's fiscal year, which shall be the calendar year unless the Board determines otherwise.

"*Losses*" means items of loss and deduction of the Company determined according to Section 8(b).

"*Minimum Gain*" means Company minimum gain determined pursuant to Treasury Regulation §1.704-2(d).

"*Misallocated Item*" has the meaning given such term in Section 9(d) hereof.

"*PPP*" means Power Protection Products, Inc., a Delaware corporation.

"*PPP Profits and Losses*" means, for each Fiscal Year or part thereof, the Profits and Losses for such Fiscal Year attributable solely to the operations of PPP as reflected on its audited income statement.

'*Profits*" means items of income and gain of the Company determined according to Section 8(b).

"*Subsidiary*" means, with respect to any person, any corporation, limited liability company, partnership, association or other business entity of which (i) if a corporation, a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time owned or controlled, directly or indirectly, by such person or one or more of the other Subsidiaries of such person or a combination thereof, or (ii) if a limited liability company, partnership, association or other business entity, a majority of the partnership or other similar ownership interest thereof is at the time owned or controlled, directly or indirectly, by any person or one or more Subsidiaries of such person or entity or a combination thereof. For purposes of this Agreement, a person or persons shall be deemed to have a majority ownership interest in a limited liability company, partnership, association or other business entity if such person or persons shall be allocated a majority of limited liability company, partnership, association or other business entity gains or losses or shall be or control any managing director, managing member, or general partner of such limited liability company, partnership, association or other business entity.

"*Tax Matters Partner*" has the meaning set forth in Code §6231.

"*Treasury Regulations*" means the income tax regulations promulgated under the Code and effective as of the date of this Agreement. At the discretion of the Managing Member, such term will be deemed to include any future amendments to such regulations and any corresponding provisions of succeeding regulations (whether or not such amendment and corresponding provisions are mandatory or discretionary).

"*TSP*" means Thermal Sensing Products. Inc.. a Delaware corporation.

"*TSP Profits and Losses*" means. for each Fiscal Year or part thereof. the Profits and Losses for such Fiscal Year attributable solely to the operations of TSP as reflected on its audited income statement.

"*Unallocated Item*" has the meaning set forth in Section 9(d) hereof.

"*Unit*" means a fractional part of the membership interests of the Company; *provided* that any class of Units issued will have designations, preferences or special rights set forth in this

Agreement, and the Company interest represented by such class of Units will be determined in accordance with such designations, preferences or special rights.

"*Unitholder*" means any person, whether or not a Member, in its capacity as owner of one or more outstanding Units, as reflected on the Company's books and records.

12.    *Assignments.* A Member may not assign in whole or in part his limited liability company interest without the written consent of the other Members which consent may be granted or withheld in each of their sole and absolute discretion.

13.    *Resignation.* A Member may not resign from the Company without the other Members' consent.

14.    *Liability of Members.* The Members shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the Act.

15.    *Governing Law.* All issues and questions concerning the application, construction, validity, interpretation and enforcement of this Agreement and the exhibits and schedules to this Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, and specifically the Act, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

16.    *Headings and Sections.* The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision of this Agreement.

17.    *Amendments.* This Agreement may be amended, supplemented or restated only upon the written consent of all of the Members.

18.    *. Binding Effect.* Except as otherwise provided to the contrary in this Agreement, this Agreement shall be binding upon and inure to the benefit of the Members, their distributees, heirs, legal representatives, executors, administrators, successors and permitted assigns.

19. .    *Counterparts.* This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and shall be binding upon the Member who executed the same, but all of such counterparts shall constitute the same agreement.

20.    *Severability.* Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement

21.    *Entire Agreement.*  Except as otherwise expressly set forth in this Agreement, this Agreement and the other agreements referred to in this Agreement embody the complete agreement and understanding among the parties to this Agreement with respect to the subject matter of this Agreement and supersedes and preempts any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter of this Agreement in any way.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Amended and Restated Limited Liability Company Agreement as of the 16th day of February, 1999.

POWER PROTECTION PRODUCTS, INC.

By: _____
Name:    Dennis Karr
Title:    President

ELECTRONIC PACKAGING PRODUCTS, INC.

By: _____
Name:    Dennis Karr
Title:    President

THERMAL SENSING PRODUCTS, INC.

By: _____
Name:    Dennis Karr
Title:    President

*Schedule I*

**Officers**

| NAME | TITLE |
| --- | --- |
| Dennis Karr | President |
| Michael Rabasca | Secretary and Treasurer |
| Gottfried Tittiger | Assistant Secretary |
| Robert Burlinson | Assistant Treasurer |

### State of Delaware
## Office of the Secretary of State

PAGE   1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF LIMITED LIABILITY COMPANY OF "AIRPAX
ACQUISITION, LLC", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY
OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

Edward J. Freel, Secretary of State

2964882   8100

981498531

AUTHENTICATION:      9483889

DATE:

12-23-98

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/22/1998
981498531 - 2964882

# CERTIFICATE OF FORMATION

## OF

## AIRPAX ACQUISITION, LLC

This Certificate of Formation of Airpax Acquisition, LLC (the "LLC") has been duly executed and is being filed by the undersigned, as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et. seq.).

FIRST:  The name of the limited liability company formed hereby is Airpax Acquisition, LLC.

SECOND:  The address of the registered office of the LLC in the State of Delaware is c/o Corporation Service Company, 1013 Centre Road, Wilmington, Delaware 19805.

THIRD: The name and address of the registered agent for service of process on the LLC in the State of Delaware is Corporation Service Company, 1013 Centre Road, Wilmington, Delaware 19805.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Formation as of this 22nd day of December, 1998.

Airpax Acquisition, LLC

By: _____

Name: Donna McClurkin-Fletcher

Title:  Authorized Person

I:\CORPORATIVE\Airpax\Corporate\LLC2\Conform.Airpax Acquisition.DO3.wpd

*State of Delaware*

*Office of the Secretary of State*   PAGE   1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF AMENDMENT OF "AIRPAX ACQUISITION,

LLC", CHANGING ITS NAME FROM "AIRPAX ACQUISITION, LLC" TO

"AIRPAX CORPORATION, LLC", FILED IN THIS OFFICE ON THE

TWENTY-NINTH DAY OF APRIL, A.D. 1999, AT 9 O'CLOCK A.M.

Edward J. Freel, Secretary of State

2964882   8100

991171622

AUTHENTICATION:   9718152

DATE:   04-30-99

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 04/29/1999
991171622 - 2964882

# CERTIFICATE OF AMENDMENT

## OF

## AIRPAX ACQUISITION, LLC

This Certificate of Amendment of Airpax Acquisition, LLC, has been duly executed and is being filed by the undersigned, as an authorized person, to amend a limited liability company under the Delaware Limited Liability Company Act (6 Del. C., §18-101, et seq).

It is hereby certified that:

        1.     The name of the limited liability company is Airpax Acquisition, LLC (hereinafter called the "limited liability company").

        2.     The Certificate of Formation of the limited liability company is hereby amended by striking out Article First thereof and by substituting in lieu of said Article First the following:

     "FIRST: The name of the limited liability company is AIRPAX CORPORATION, LLC."

        IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Amendment as of this 29 day of April 1999.

AIRPAX ACQUISITION, LLC

By: _Dennis K Kau_

Name: Dennis K. Kau
Title: Authorized Person

*State of Delaware*

## *Office of the Secretary of State*  PAGE  1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "ELECTRONIC
PACKAGING PRODUCTS, INC.", FILED IN THIS OFFICE ON THE
TWENTY-SECOND DAY OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

*Edward J. Freel, Secretary of State*

2983686  8100

991088204

AUTHENTICATION:  9614299

DATE:   03-08-99

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/22/1998
981498435 - 2983686

# CERTIFICATE OF INCORPORATION

## OF

## ELECTRONIC PACKAGING PRODUCTS, INC.

The undersigned natural person of the age of eighteen years or more for the purpose of organizing a corporation for conducting the business and promoting the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware (particularly Chapter 1, Title 8 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "General Corporation Law of the State of Delaware"), hereby certifies that:

### ARTICLE FIRST:

The name of the corporation is Electronic Packaging Products, Inc. (hereinafter the "Corporation").

### ARTICLE SECOND:

The address of the Corporation's registered office in the State of Delaware is 1013 Centre Road, Wilmington, Delaware, 19805, in the City of Wilmington, County of New Castle. The name of the registered agent at such address is the Corporation Service Company.

### ARTICLE THIRD:

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

### ARTICLE FOURTH:

The total number of shares of stock which the Corporation has the authority to issue is 1,000 shares of Common Stock, with a par value of $0.01 per share.

### ARTICLE FIFTH:

The name and address of the sole incorporator is as follows:

*NAME:*
Donna McClurkin-Fletcher

*ADDRESS:*
c/o Kirkland & Ellis
655 Fifteenth Street, NW
Washington, DC 20005

I:\CORPORATION\Airport\Corpdocs\Certincm Electronic.wpd

## ARTICLE SIXTH:

The Corporation is to have perpetual existence.

## ARTICLE SEVENTH:

In furtherance and not in limitation of the powers conferred by statute, the board of directors of the Corporation is expressly authorized to make, alter or repeal the By-Laws of the Corporation.

## ARTICLE EIGHTH:

Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws of the Corporation may provide. The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the By-Laws of the Corporation. Election of directors need not be by written ballot unless the By-Laws of the Corporation so provide.

## ARTICLE NINTH:

To the fullest extent permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended, a director of this Corporation shall not be liable to the Corporation or its stockholders for monetary damages for a breach of fiduciary duty as director. Any repeal or modification of this Article Ninth shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

## ARTICLE TENTH:

The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware.

## ARTICLE ELEVENTH:

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

I, the undersigned, being the sole incorporator hereinabefore named, for the purpose of forming a corporation in pursuance of the General Corporation Law of the State of Delaware, do make and file this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set my hand this 22nd day of December, 1998.

Donna McClurkin-Fletcher, Sole Incorporator

I:\CORPORAT\GP\Airport\Corpdocs\EZP\Certincm Electronic.hpd

OCT-25-02 16:16 FROM:AIRI   CORP                ID:4102   405                    PAGE   5/12

## State of Delaware

### Office of the Secretary of State    PAGE   1

---

    I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF INCORPORATION OF "POWER PROTECTION

PRODUCTS, INC.", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY

OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

Edward J. Freel, Secretary of State

2983689   8100                          AUTHENTICATION:  9614313

991088188                                      DATE:  03-08-99

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/22/1996
961498463 - 2903689

# CERTIFICATE OF INCORPORATION

## OF

## POWER PROTECTION PRODUCTS, INC.

The undersigned natural person of the age of eighteen years or more for the purpose of organizing a corporation for conducting the business and promoting the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware (particularly Chapter 1, Title 8 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "General Corporation Law of the State of Delaware"), hereby certifies that:

### ARTICLE FIRST:

The name of the corporation is Power Protection Products, Inc. (hereinafter the "Corporation").

### ARTICLE SECOND:

The address of the Corporation's registered office in the State of Delaware is 1013 Centre Road, Wilmington, Delaware, 19805, in the City of Wilmington, County of New Castle. The name of the registered agent at such address is the Corporation Service Company.

### ARTICLE THIRD:

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

### ARTICLE FOURTH:

The total number of shares of stock which the Corporation has the authority to issue is 1,000 shares of Common Stock, with a par value of $0.01 per share.

### ARTICLE FIFTH:

The name and address of the sole incorporator is as follows:

| NAME: | ADDRESS: |
|-------|----------|
| Donna McClurkin-Fletcher | c/o Kirkland & Ellis |
| | 655 Fifteenth Street, NW |
| | Washington, DC 20005 |

I:\CORPORAT\GP\Airpax\Corpdocs\Certincm.Power.wpd

## ARTICLE SIXTH:

The Corporation is to have perpetual existence.

## ARTICLE SEVENTH:

In furtherance and not in limitation of the powers conferred by statute, the board of directors of the Corporation is expressly authorized to make, alter or repeal the By-Laws of the Corporation.

## ARTICLE EIGHTH:

Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws of the Corporation may provide. The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the By-Laws of the Corporation. Election of directors need not be by written ballot unless the By-Laws of the Corporation so provide.

## ARTICLE NINTH:

To the fullest extent permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended, a director of this Corporation shall not be liable to the Corporation or its stockholders for monetary damages for a breach of fiduciary duty as director. Any repeal or modification of this Article Ninth shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

## ARTICLE TENTH:

The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware.

## ARTICLE ELEVENTH:

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

I, the undersigned, being the sole incorporator hereinbefore named, for the purpose of forming a corporation in pursuance of the General Corporation Law of the State of Delaware, do make and file this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set my hand this 22nd day of December, 1998.

Donna McClurkin-Fletcher, Sole Incorporator

OCT-26-02 16:17 FROM:AIRPAX CULP                    ID:41022824?                    PAGE

*State of Delaware*

*Office of the Secretary of State*  PAGE  1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF INCORPORATION OF "THERMAL SENSING

PRODUCTS, INC.", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY

OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

*Edward J. Freel, Secretary of State*

2983694  8100                    AUTHENTICATION:  9614328

991088190                        DATE:  03-08-99

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/22/1998
981498505 - 2983694

# CERTIFICATE OF INCORPORATION

## OF

## THERMAL SENSING PRODUCTS, INC.

The undersigned natural person of the age of eighteen years or more for the purpose of organizing a corporation for conducting the business and promoting the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware (particularly Chapter 1, Title 8 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "General Corporation Law of the State of Delaware"), hereby certifies that:

### ARTICLE FIRST:

The name of the corporation is Thermal Sensing Products, Inc. (hereinafter the "Corporation").

### ARTICLE SECOND:

The address of the Corporation's registered office in the State of Delaware is 1013 Centre Road, Wilmington, Delaware, 19805, in the City of Wilmington, County of New Castle. The name of the registered agent at such address is the Corporation Service Company.

### ARTICLE THIRD:

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

### ARTICLE FOURTH:

The total number of shares of stock which the Corporation has the authority to issue is 1,000 shares of Common Stock, with a par value of $0.01 per share.

### ARTICLE FIFTH:

The name and address of the sole incorporator is as follows:

*NAME:*
Donna McClurkin-Fletcher

*ADDRESS:*
c/o Kirkland & Ellis
655 Fifteenth Street, NW
Washington, DC 20005

I:\CORPORATION\Airpax\Corpdocs\TSP\Certincrn\Thermal.wpd

## ARTICLE SIXTH:

The Corporation is to have perpetual existence.

## ARTICLE SEVENTH:

In furtherance and not in limitation of the powers conferred by statute, the board of directors of the Corporation is expressly authorized to make, alter or repeal the By-Laws of the Corporation.

## ARTICLE EIGHTH:

Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws of the Corporation may provide. The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the By-Laws of the Corporation. Election of directors need not be by written ballot unless the By-Laws of the Corporation so provide.

## ARTICLE NINTH:

To the fullest extent permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended, a director of this Corporation shall not be liable to the Corporation or its stockholders for monetary damages for a breach of fiduciary duty as director. Any repeal or modification of this Article Ninth shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

## ARTICLE TENTH:

The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware.

## ARTICLE ELEVENTH:

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

I:\CORPORAT\IGP\Airpet\Corpdocs\TEP\Certinen.Thermal.wpd

I, the undersigned, being the sole incorporator hereinbefore named, for the purpose of forming a corporation in pursuance of the General Corporation Law of the State of Delaware, do make and file this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set my hand this 22nd day of December, 1998.

Donna McClurkin-Fletcher, Sole Incorporator

I:\CORPORATION\Airport\Corpdocs\TSP\Certincm Thermal.wpd



After establishment of China

Airpax Holding Company, LLC & Subsidiaries

itation for Personal Service  - BY CERTIFIED MAIL    Lit. Seq. # 5.013.01

No. 2002-12-005078-G                    ORIGINAL

T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If ou or your attorney do not file a written answer with the clerk who issued this itation by 10:00 a.m. on the Monday next following the expiration of twenty ays after you were served this citation and petition, a default judgment may be aken against you.

O: AIRPAX CORPORATION, L.L.C.
    SERVING ITS REGISTERED AGENT,
    CORPORATION SERVICE COMPANY
    800 BRAZOS, SUITE 750
    AUSTIN, TEXAS 78701

he _____ DEFENDANT _____ , GREETING:

    You are commanded to appear by filing a written answer to the

LAINTIFFS' ORIGINAL PETITION

t or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 ays after the date of service of this citation before the Honorable District ourt 404th Judicial District of Cameron County, Texas at the Courthouse of said ounty in Brownsville, Texas.  Said _____ PETITION _____ was filed on ECEMBER 19, 2002 .  A copy of same accompanies this citation.

he file number of said suit being No. 2002-12-005078-G.

he style of the case is:

JESUS MORENO SILVA, INDIVIDUALLY, ET AL
VS.
AIRPAX ACQUISITION, L.L.C., ET AL

aid petition was filed in said court by _____ HON. CATHERINE SMITH Attorney for _____ PLAINTIFF _____ ), whose address is 22 WEST UNIVERSITY DRIVE EDINBURG  TX  78539

    The nature of the demand is fully shown by a true and correct copy of the etition accompanying this citation and made a part hereof.

    The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law irects.

    Issued and given under my hand and seal of said Court at Brownsville, exas, this the 30th day of DECEMBER , A.D. 2002.

ATTACH RETURN RECEIPTS WITH
ADDRESSEE'S SIGNATURE

Rule 106 (a)(2): The citation
shall be served by mailing to
the defendant by Certified Mail,
Return Receipt Requested, a true
copy of the citation.

Sec. 17.027, Rules of Civil
Practice and Remedies Code, if
not prepared by Clerk of Court.

NAME OF PREPARER          TITLE

ADDRESS

CITY          STATE          ZIP

CERTIFICATE OF  ELIVERY OF MAIL

I hereby certify that on the 30th of

DECEMBER  2002,  I mailed to

AIRPAX ACQUISITION, L.L.C.

by registered mail or certified mail, with
delivery restricted to addressee only,
return receipt requested, a true copy of
this citation with a copy of the petition
attached hereto

CERTIFIED MAIL NO.  9581-0908
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

AURORA DE LA GARZA , District Clerk
Cameron County, Texas

By: _Rosie Sotelo_ , Deputy

SENDER:

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CORPORATION SERVICE CO.
REGISTERED AGENT FOR,
AIRPAX CORPORATION, L.L.C.
800 BRAZOS, SUITE 750
AUSTIN, TX 78701

A. Signature
X _____  ☐ Agent
                   ☐ Addressee
B. Received by ( Printed Name)  C. Date of Delivery
                                1-2-03
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)    7002-2410-0000-9 31-0915

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540

ATTACH RETURN RECEIPTS WITH
ADDRESSEE'S SIGNATURE

Rule 106 (a)(2): The citation
shall be served by mailing to
the defendant by Certified Mail,
Return Receipt Requested, a true
copy of the citation.

Sec. 17.027, Rules of Civil
Practice and Remedies Code, if
not prepared by Clerk of Court.

NAME OF PREPARER            TITLE

ADDRESS

CITY            STATE        ZIP

**CERTIFICATE** OF DELIVERY OF MAIL

I hereby certify that on the <u>30th</u> of
<u>**DECEMBER**  2002</u>,  I mailed to

<u>    AIRPAX CORPORATION, L.L.C.    </u>

by registered mail or certified mail, with
delivery restricted to addressee only,
return receipt requested, a true copy of
this citation with a copy of the petition
attached hereto.

CERTIFIED MAIL NO.   <u>9581-0915</u>
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

<u>AURORA DE LA GARZA    </u>, District Clerk
Cameron County, Texas

By:  <u>Rosie Sotelo</u>  , Deputy

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF MARIA SANTOS GARCIA | § | |
| BANDA, DECEASED, JESUS MORENO | § | |
| GARCIA, DORA MORENO GARCIA, | § | |
| BARBARA MORENO GARCIA, | § | |
| ADVIENTA MORENO GARCIA PRADO, | § | |
| SABINA MORENO GARCIA, MONICA | § | **B-03-030** |
| MORENO GARCIA, SOCORRO MORENO | § | CIVIL ACTION NO. _____ |
| GARCIA MENDOZA, JUAN PABLO | § | |
| MORENO GARCIA, MARIA SANTOS | § | |
| MORENO GARCIA , VALERIE MORENO | § | |
| GARCIA | § | |
| | § | |
| VS. | § | |
| | § | |
| AIRPAX ACQUISITION, L.L.C., | § | |
| AIRPAX CORPORATION, L.L.C. and | § | "JURY" |
| AIPAX DE MEXICO, S.A. | § | |

**DEFENDANT AIRPAX CORPORATION, L.L.C.'S INDEX OF DOCUMENTS
BEING FILED WITH THE UNITED STATES DISTRICT COURT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION.

In connection with the removal of Cause No. 2002-12-5078-G from the 404th Judicial District

Court, Cameron County, Texas, Defendant, Airpax Corporation, L.L.C., has filed in connection with

the removal of this action all executed process, all pleadings asserting causes of action and all

answers to those causes of action, all orders signed by the state judge, an index of matters being filed,

and a list of all counsel of record. The specific matters filed are:

       1.     Civil Cover Sheet JS 44;

2.    List of All Parties;

3.    List of Counsel of Record;

4.    Certified Copy of State Court's Docket Sheet;

5.    Copy of Plaintiffs' Original Petition (Complaint);

6.    Copy of Executed Process on Defendant Airpax Corporation, L.L.C.;

7.    Original Answer of Defendant Airpax Corporation, L.L.C.

Respectfully submitted,

F. Edward Barker
State Bar No. 01741000
Federal I.D. No. 970
Attorney-in-Charge for Defendant
Airpax Corporation, L.L.C.
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
(361) 881-9217; FAX: (361) 882-6590

OF COUNSEL:
BARKER, LEON, FANCHER & MATTHYS,
L.L.P.

## CERTIFICATE OF SERVICE

I certify that on January 25 , 2003, a complete and correct copy of **Defendant Airpax Corporation, L.L.C.'s Index of Documents Being Filed With the United States District Court** was served on each party by delivery to the following attorneys of record in the manner indicated below:

**CM/RRR No. 7002 2410 0003 6795 1896**
Ms. Catherine W. Smith
LAW OFFICE OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539

F. Edward Barker

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF MARIA SANTOS GARCIA | § | |
| BANDA, DECEASED, JESUS MORENO | § | |
| GARCIA, DORA MORENO GARCIA, | § | |
| BARBARA MORENO GARCIA, | § | |
| ADVIENTA MORENO GARCIA PRADO, | § | **B-03-030** |
| SABINA MORENO GARCIA, MONICA | § | |
| MORENO GARCIA, SOCORRO MORENO | § | CIVIL ACTION NO. _____ |
| GARCIA MENDOZA, JUAN PABLO | § | |
| MORENO GARCIA, MARIA SANTOS | § | |
| MORENO GARCIA , VALERIE MORENO | § | |
| GARCIA | § | |
| | § | |
| VS. | § | |
| | § | |
| AIRPAX ACQUISITION, L.L.C., | § | |
| AIRPAX CORPORATION, L.L.C. and | § | "JURY" |
| AIPAX DE MEXICO, S.A. | § | |

## LIST OF ALL PARTIES

1.    Plaintiffs - Jesus Moreno Silva, Individually and as Representative of the Estate of Maria Santos Garcia Banda; Jesus Moreno Garcia; Dora Moreno Garcia; Barbara Moreno Garcia; Advienta Moreno Garcia Prado; Sabina Moreno Garcia; Monica Moreno Garcia; Socorro Moreno Garcia Mendoza; Juan Pablo Moreno Garcia; Maria Santos Moreno Garcia; and Valerie Moreno Garcia.

2.    Defendant - Airpax Acquisition, L.L.C. (erroneously named, no such entity exists).

3.    Defendant - Airpax Corporation, L.L.C.

4.    Defendant – Airpax De Mexico, S.A.

        Case is presently pending in the 404th Judicial District Court, Cameron County, Texas,

Cause No. 2002-12-5078-G..

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY § | |
| AND AS REPRESENTATIVE OF THE § | |
| ESTATE OF MARIA SANTOS GARCIA § | |
| BANDA, DECEASED, JESUS MORENO § | |
| GARCIA, DORA MORENO GARCIA, § | |
| BARBARA MORENO GARCIA, § | |
| ADVIENTA MORENO GARCIA PRADO, § | |
| SABINA MORENO GARCIA, MONICA § | |
| MORENO GARCIA, SOCORRO MORENO § CIVIL ACTION NO. **B-03-030** | |
| GARCIA MENDOZA, JUAN PABLO § | |
| MORENO GARCIA, MARIA SANTOS § | |
| MORENO GARCIA , VALERIE MORENO § | |
| GARCIA § | |
| § | |
| VS. § | |
| § | |
| AIRPAX ACQUISITION, L.L.C., § | |
| AIRPAX CORPORATION, L.L.C and § "JURY" | |
| AIPAX DE MEXICO, S.A. § | |

**COUNSEL OF RECORD**

1.    **Attorney-in-Charge for Plaintiffs:**

Ms. Catherine W. Smith
State Bar No. 18547080
Federal I.D. No. _____
LAW OFFICE OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539
(956) 383-7441
FAX (956) 381-0825

2.     **Attorney-in-Charge for Defendant Airpax Corporation, L.L.C.**

F. Edward Barker
State Bar No. 01741000
Federal I.D. No. 970
Attorney-in-Charge for Defendant Airpax Corporation, L.L.C.
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas  78478
(512) 881-9217; FAX (512) 882-9437

OF COUNSEL:
BARKER, LEON, FANCHER & MATTHYS, L.L.P.

RUN DATE 01/27/03
RUN TIME 3:36 PM

* * * C L E R K ' S   E N T R I E S * * *

JESUS MORENO SILVA, INDIVIDUALLY, ET AL

VS

AIRPAX ACQUISITION, L.L.C., ET AL

00021501                                    (01)
HON. CATHERINE SMITH
222 WEST UNIVERSITY DRIVE
EDINBURG    TX      78539 0000      WRONGFUL DEATH

00544601
F. EDWARD BARKER
555 N. CARANCAHUA ST.
CORPUS CHRISTI, TX    78478 0000

12/19/02  ORIGINAL PETI
12/19/02  JURY FEE: Pd.
12/30/02  CITATION (CM)
          L.L.C.
12/30/02      SERVED: UN
12/30/02  CITATION (CM)
          L.L.C.
12/30/02      SERVED: 0
12/30/02  CITATION (CM)
12/30/02      SERVED: UN
01/16/03  ORIGINAL ANSW
          L.L.C.

A TRUE COPY I CERTIFY
JOE G. DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
BY: _____
DEPUTY

CAUSE NO. 2002-12-5078-G

| | |
|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY | § |
| AND AS REPRESENTATIVE OF THE | § |
| ESTATE OF MARIA SANTOS GARCIA | § |
| BANDA, DECEASED; JESUS MORENO | § |
| GARCIA, DORA MORENO GARCIA, | § |
| BARBARA MORENO GARCIA, ADVIENTA, | § |
| MORENO GARCIA PRADO, SABINA | § |
| MORENO GARCIA, MONICA MORENO | § |
| GARCIA, SOCORRO MORENO GARCIA | § |
| MENDOZA, JUAN PABLO MORENO | § |
| GARCIA, MARIA SANTOS MORENO | § |
| GARCIA, VALERIE MORENO GARCIA, | § |
| *Plaintiffs* | § |
| VS. | § |
| | § |
| AIRPAX ACQUISITION, L.L.C., AIRPAX | § |
| CORPORATION, L.L., AND AIRPAX DE | § |
| MEXICO, S.A., | § |
| *Defendants* | § |

IN THE DISTRICT COURT

DEC 19 2002

CAMERON COUNTY, TEXAS

404th JUDICIAL DISTRICT

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, JESUS MORENO SILVA, Individually and as Representative of the Estate of MARIA SANTOS GARCIA BANDA, Deceased, JESUS MORENO GARCIA, DORA MORENO GARCIA, BARBARA MORENO GARCIA, ADVIENTA MORENO GARCIA PRADO, SABINA MORENO GARCIA, MONICA MORENO GARCIA, SOCORRO MORENO GARCIA MENDOZA, JUAN PABLO MORENO GARCIA, MARIA SANTOS MORENO GARCIA, and VALERIE MORENO GARCIA (hereinafter referred to as "Plaintiffs"), complaining of AIRPAX ACQUISITION, L.L.C., AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A., and in support thereof would respectfully show the following:

I.

## DISCOVERY CONTROL PLAN

Plaintiffs intend to conduct discovery under Level 3 Discovery Control Plan pursuant to Tex. R. of Civ. P. 190.

II.

## PARTIES

A.    Plaintiff JESUS MORENO SILVA is the surviving spouse of MARIA SANTOS GARCIA BANDA, Deceased, and a resident of San Luis Potosi, San Luis Potosi, Mexico.

B.      Plaintiff JESUS MORENO GARCIA is a surviving adult son of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

C.      Plaintiff DORA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

D.      Plaintiff BARBARA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

E.      Plaintiff ADVIENTA MORENO GARCIA PRADO is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

F.      Plaintiff SABINA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

G.      Plaintiff MONICA MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

H.      Plaintiff SOCORRO MORENO GARCIA MENDOZA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

I.      Plaintiff JUAN PABLO MORENO GARCIA is a surviving adult son of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

J.      Plaintiff MARIA SANTOS MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

K.      Plaintiff VALERIE MORENO GARCIA is a surviving adult daughter of MARIA SANTOS GARCIA BANDA, Deceased and a resident of Matamoros, Tamaulipas, Mexico.

L.      Defendant AIRPAX ACQUISITION, L.L.C., is a Delaware corporation authorized to do business in the state of Texas with its principal place of business in Brownsville, Cameron County, Texas, and may be served with process through its registered agent Mr. David Lopez at 468 Regal Row, Brownsville, Texas 78521. Service is hereby requested on this Defendant pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure, by Certified Mail, Return Receipt Requested.

L.      Defendant AIRPAX CORPORATION, L.L.C. is a Maryland Corporation authorized to do business in the state of Texas and may be served with process through its registered agent Corporation Service Company at 800 Brazos, Suite 750, Austin, Texas 78701. Service is hereby requested on this Defendant pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure, by Certified Mail, Return Receipt Requested.

2

M.    Defendant AIRPAX DE MEXICO, S.A., is a twin plant to Airpax Corporation, L.L.C. and Airpax Acquisition, L.L.C. with offices located at Del Obrero, Cp 87316, Matamoros, Tamps., Mexico.  This Defendant is connected directly to and does business through Defendant Airpax Corporation, L.L.C. of Brownsville, Cameron County, Texas. This Defendant may be served with process by serving Mr. David Lopez at 468 Regal Row, Brownsville, Texas 78521. Service is hereby requested on this Defendant pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure, by Certified Mail, Return Receipt Requested.

III.

## VENUE & JURISDICTION

This Court has jurisdiction of this matter in that Plaintiffs are seeking damages within the jurisdictional limits of the Court.  Venue is appropriate in Cameron County, Texas pursuant to Tex.Civ.P.Rem.C. §§15.001 and 15.002 and Tex.Civ.P.Rem.C. §71.031. Jurisdiction is appropriate in Cameron County State District Court because Cameron County and the state of Texas are the location of the principal place of business of AIRPAX CORPORATION, the owner of the vehicle and employer (through its Mexican "twin") of the driver involved in this tragic accident.   Defendant AIRPAX DE MEXICO, S.A., the Mexican "twin" to Defendant AIRPAX CORPORATION is a Mexican citizen as are the Plaintiffs and their decedent MARIA SANTOS GARCIA BANDA.  This case is not removable under 28 U.S.C. §1441 because Defendant AIRPAX CORPORATION, L.L.C. has its principal place of business in Cameron County, Texas, and this Defendant is properly joined and served. Under 28 U.S.C. §1332(c)(1) it is a citizen of Texas.  There is no diversity of citizenship under 28 U.S.C. §1332 and *Giannokos v. M/V Bravo Trader,* 762 F2d 1295 (5th Cir. 1985) due to the presence of aliens on both sides of the controversy.

IV.

## FACTS

1.    On or about May 3, 2001, MARIA SANTOS GARCIA BANDA, Deceased, accompanied by her sister Maria Petra Garcia de Banda, Deceased, were pedestrians on M. C. Lerma Morelos and Gonzalez Blvd., Matamoros, Tamaulipas, Mexico and were attempting to cross the street.

2.    On that occasion, Magdaleno Alcocer Muñiz, who, based on the police accident report, was an employee of Defendants, was driving a 1986 trailer truck owned by AIRPAX ACQUISITION, L.L.C. of Brownsville, Texas.   AIRPAX DE MEXICO, S.A. is a part of a twin

plant operation of AIRPAX CORPORATION, L.L.C. of Brownsville, Texas, the owner of the truck involved in this accident and an employer of Mr. Muñiz. The truck in question bears USDOT #669800; Texas license plate number: TX 2 AL 309.   Defendants AIRPAX ACQUISITION, L.L.C, AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A. are liable for the acts and omissions of Magdaleno Alcocer Muñiz under the doctrines of agency and respondeat superior.  AIRPAX ACQUISITION, L.L.C. and AIRPAX DE MEXICO, S.A. operate under an agreement among their members toward a common purpose and for mutual financial interests, with equal right to control the enterprise.  As such, they are each responsible for the acts of the others.

3.    On the occasion in question, the driver failed to exercise ordinary care in the operation of the truck he was driving, and such failure brought about the tragic death of MARIA SANTOS GARCIA BANDA and her sister.

4.    This case is brought pursuant to the Texas Wrongful Death and Survival Statutes as found in Chapter 71, Tex.Civ.P.Rem.C.

5.    On the occasion in question Magdaleno Alcocer Muñiz did not hold a valid driver's license, either of any state in the United States or in Mexico, and was therefore operating the truck in question illegally.  Magdaleno Alcocer Muñiz was the driver and agent of Defendants, and the death of MARIA SANTOS GARCIA BANDA was brought about by the wrongful acts, carelessness, and lack of skill of Defendants and their agent and employee Magdaleno Alcocer Muñiz, and, therefore, these Defendants are liable for damages arising from the wrongful death of MARIA SANTOS GARCIA BANDA.

6.    These Defendants, together, and each of them, were responsible to assure that those whom they placed behind the wheel of heavy trucks, specifically this truck, possessed sufficient skill and knowledge of applicable traffic laws as well as driving skills to operate the equipment safely and without causing undue harm or injury to others.  They failed to do so, and this failure was the proximate cause of the injuries to Plaintiffs and the wrongful death of MARIA SANTOS GARCIA BANDA.

## V.

## NEGLIGENCE

7.    Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

8.    All Defendants breached their duties in one or more of the following respects:

4

As to Defendant AIRPAX ACQUSITION, L.L.C.:

    a.    Failing to assure that all operators of its trucks, either in the United States or elsewhere, were licensed, trained, and skilled drivers familiar with applicable traffic laws and with training and skills sufficient to safely and efficiently operate heavy trucks;

    b.    Failing to properly train drivers;

    c.    Failing to set forth appropriate rules and regulations pertaining to the hiring of drivers and placing such drivers behind the wheel of its trucks;

    d.    Entrusting the use of the truck to Magdaleno Alcocer Muñiz without ensuring his level of skill was sufficient to safely operate the truck;

    e.    Entrusting Magdaleno Alcocer Muñiz without ensuring he was licensed to operate this truck; and

    f.    Failing to impose and enforce hiring requirements on its "twin plant" operation which would ensure that only properly licensed and qualified drivers were employed to operate its trucks.

As to Defendant AIRPAX CORPORATION, L.L.C.:

    a.    Failing to assure that all operators of its trucks, either in the United States or elsewhere, were licensed, trained, and skilled drivers familiar with applicable traffic laws and with training and skills sufficient to safely and efficiently operate heavy trucks;

    b.    Failing to properly train drivers;

    c.    Failing to set forth appropriate rules and regulations pertaining to the hiring of drivers and placing such drivers behind the wheel of its trucks;

    d.    Entrusting the use of the truck to Magdaleno Alcocer Muñiz without ensuring his level of skill was sufficient to safely operate the truck;

    e.    Entrusting Magdaleno Alcocer Muñiz without ensuring he was licensed to operate this truck; and

    f.    Failing to impose and enforce hiring requirements on its "twin plant" operation which would ensure that only properly licensed and qualified drivers were employed to operate its trucks.

As to Defendant AIRPAX DE MEXICO, S.A., by and through Defendants Airpax Acquisition, L.L.C. and Airpax Corporation, L.L.C.:

a.  Failing to assure that all operators of its trucks, either in the United States or elsewhere, were licensed, trained, and skilled drivers familiar with applicable traffic laws and with training and skills sufficient to safely and efficiently operate heavy trucks;

b.  Failing to properly train drivers;

c.  Failing to set forth appropriate rules and regulations pertaining to the hiring of drivers and placing such drivers behind the wheel of its trucks;

d.  Entrusting the use of the truck to Magdaleno Alcocer Muñiz without ensuring his level of skill was sufficient to safely operate the truck; and

e.  Entrusting Magdaleno Alcocer Muñiz without ensuring he was licensed to operate this truck.

The acts and omissions of these Defendants were the proximate cause of the injuries and damages suffered by Plaintiffs and complained of herein.

**VI.**

9.  Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

10.  On the occasion in question Magdaleno Alcocer Muñiz was negligent in the operation of the truck which struck MARIA SANTOS GARCIA BANDA. He did not hold a valid driver's license to operate the truck he was driving, which is a violation of the penal statutes of Texas and Mexico. Magdaleno Alcocer Muñiz failed to use reasonable care in the operation of the subject truck, failed to be vigilant for the presence of pedestrians, failed to timely apply his brakes, moved his truck forward while pedestrians were in its path of travel, and failed to assure a safe clearance between the truck and passengers before moving the truck forward. All such conduct was the proximate cause of the injuries and damages complained of herein and the death of MARIA SANTOS GARCIA BANDA. All such conduct was attributable to Defendants AIRPAX ACQUISITION, L.L.C, AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A. under the doctrine of agency and respondeat superior.

11.  On the occasion in question, Magdaleno Alcocer Muñiz was operating the truck on the occasion in question with the full authority, permission, and approval of Defendants. He had been hired by Defendants to operate the truck for them and on their behalf, and when he was arrested for the death of MARIA SANTOS GARCIA BANDA, Defendants paid

his fine to obtain his release from jail. As such, Defendants are responsible for his conduct as his principal and his employer fully as if the Defendants themselves committed his acts and omissions.

## VII.

### DAMAGES

12.     Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

13.     As a proximate result of the conduct of Defendants' negligence, MARIA SANTOS GARCIA BANDA, Deceased, suffered severe, debilitating, and painful injuries and, ultimately, death as a result of the accident which occurred on May 3, 2001.

14.     In addition to the physical pain and mental and emotional suffering MARIA SANTOS GARCIA BANDA suffered prior to her death, Plaintiff JESUS MORENO SILVA as Representative of the Estate of MARIA SANTOS GARCIA BANDA, Deceased, incurred reasonable and necessary funeral and burial expenses.

15.     Plaintiff JESUS MORENO SILVA, Individually, is the husband of MARIA SANTOS GARCIA BANDA, Deceased. As a result of the injuries and wrongful death of his wife, Plaintiff has suffered mental and emotional anguish, pain and suffering, has suffered loss of society, companionship and consortium, grief, bereavement, damage to the family relationship, and the loss of care, maintenance, support, advice, counsel, contributions of pecuniary value, loss of past, present, and future earnings, and the loss of household services of his spouse.

16.     Plaintiff JESUS MORENO GARCIA, as a result of his mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which he otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

17.     Plaintiff BARBARA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

18.     Plaintiff SABINA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss

of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

19.     Plaintiff ADVIENTA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

20.     Plaintiff DORA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

21.     Plaintiff SOCORRO MORENO GARCIA MENDOZA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

22.     Plaintiff MONICA MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

23.     Plaintiff JUAN PABLO MORENO, as a result of his mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family relationship, and loss of care, maintenance and support, services, advice, counsel, contributions of a pecuniary value, and comfort which he otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

24.     Plaintiff MARIA SANTOS MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society and companionship, damage to the family

relationship, and   loss of care, maintenance   and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

25.     Plaintiff VALERIE MORENO GARCIA, as a result of her mother's injuries and wrongful death, suffered damages in the form of mental anguish, pain and suffering, grief, bereavement, loss of society  and  companionship, damage to the family relationship, and  loss of care, maintenance  and support, services, advice, counsel, contributions of a pecuniary value, and comfort which she otherwise would have received from MARIA SANTOS GARCIA BANDA, Deceased.

26.     By reason of each and all of the aforementioned acts and omissions of Defendants, Plaintiffs sustained injuries and damages for which they seek recovery from Defendants in an amount in excess of the minimum jurisdictional limits of the Court.

## VIII.

## EXEMPLARY DAMAGES

27.     Plaintiffs reallege herein all factual allegations set forth above and incorporate them by reference.

28.     Defendants AIRPAX ACQUISITION, L.L.C., AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A.'s conduct amounted to malice as that term is defined in Tex.Civ.P.&Rem.C., §41.0017(b)(1) in that under the circumstances of Defendants' business, its acts and omissions created an extreme degree of risk considering the probability and magnitude of the potential harm to others, and of which Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscience indifference to the rights, safety and welfare of others.  Defendants' conduct, when viewed objectively from its standpoint at the time of the occurrence, involved an extreme degree of risk considering the probability and magnitude of the potential harm to pedestrians such as MARIA SANTOS GARCIA BANDA, Deceased.   These Defendants also are guilty of gross neglect.  Plaintiffs are entitled to recover exemplary damages against these Defendants without limitation, as may be found by the trier of fact.   At the very least, Plaintiffs are entitled to recover exemplary damages as described in Tex.Civ.P.&Rem.C.

## IX.

## JURY DEMAND

29.     Plaintiffs hereby make request for a jury trial in this cause pursuant to  Rule 216  of the Texas Rules of Civil Procedure and has deposited with the District  Clerk of

Cameron County Texas the requisite jury fee of THIRTY DOLLARS AND NO/100THS ($30.00)

## X.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs JESUS MORENO SILVA, Individually and as Representative of the Estate of MARIA SANTOS GARCIA BANDA, Deceased, JESUS MORENO GARCIA, DORA MORENO GARCIA, BARBARA MORENO GARCIA, ADVIENTA MORENO GARCIA PRADO, SABINA MORENO GARCIA, MONICA MORENO GARCIA, SOCORRO MORENO GARCIA MENDOZA, JUAN PABLO MORENO GARCIA, MARIA SANTOS MORENO GARCIA, VALERIE MORENO GARCIA respectfully pray that Defendants AIRPAX ACQUISITION, L.L.C., AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A. be cited to appear and answer, and that Plaintiffs have judgment against Defendants, jointly and severally for the following:

a.     Actual damages as alleged herein against Defendants jointly and severally in an amount within the jurisdictional limits of the Court;

b.     Pre-judgment interest at the highest legal rate;

c.     Exemplary damages as to each Defendant as allowed by law;

d.     Interest on the judgment at the highest legal rate;

e.     Costs of suit;

f.     All other relief in law and in equity to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539
(956) 383-7441 and (956) 381-0825 (Telefax)

By: _____
CATHERINE W. SMITH
State Bar No. 18547080
RAMON GARCIA
State Bar No. 07641800

ATTORNEYS FOR PLAINTIFFS

Citation for Personal Service  - BY CERTIFIED MAIL      Lit. Seq. # 5.013.01

No. 2002-12-005078-G                    **ORIGINAL**

T H E   S T A T E   O F   T E X A S

    NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: AIRPAX CORPORATION, L.L.C.
    SERVING ITS REGISTERED AGENT,
    CORPORATION SERVICE COMPANY
    800 BRAZOS, SUITE 750
    AUSTIN, TEXAS 78701

the _____DEFENDANT_____, GREETING:

    You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 404th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said _____PETITION_____ was filed on DECEMBER 19, 2002 .  A copy of same accompanies this citation.

The file number of said suit being No. 2002-12-005078-G.

The style of the case is:

        JESUS MORENO SILVA, INDIVIDUALLY, ET AL
                   VS.
        AIRPAX ACQUISITION, L.L.C., ET AL

Said petition was filed in said court by _____HON. CATHERINE SMITH_____
(Attorney for _____PLAINTIFF_____), whose address is 222 WEST UNIVERSITY DRIVE EDINBURG  TX  78539 _____.

    The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

    The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

    Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 30th day of DECEMBER , A.D. 2002.

U.S. Postal Service

<table>
<tr><td>

**ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE**

Rule 106 (a)(2): The citation shall be served by mailing to the defendant by Certified Mail, Return Receipt Requested, a true copy of the citation.

Sec. 17.027, Rules of Civil Practice and Remedies Code, if not prepared by Clerk of Court.

_____
NAME OF PREPARER        TITLE

_____
ADDRESS

_____
CITY          STATE      ZIP

</td></tr>
</table>

CERTIFICATE OF DELIVERY OF MAIL

I hereby certify that on the <u>30th</u> of

<u>DECEMBER</u> <u>2002</u>, I mailed to

_____<u>AIRPAX CORPORATION, L.L.C.</u>_____

by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached hereto.

CERTIFIED MAIL NO. ___<u>9581-0915</u>___
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

___<u>AURORA DE LA GARZA</u>___, District Clerk
Cameron County, Texas

By:_____*Jesse Sotelo*_____, Deputy

| ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE | CERTIFICATE OF DELIVERY OF MAIL |
|---|---|

**ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE**

Rule 106 (a)(2): The citation shall be served by mailing to the defendant by Certified Mail, Return Receipt Requested, a true copy of the citation.

Sec. 17.027, Rules of Civil Practice and Remedies Code, if not prepared by Clerk of Court.

_____
NAME OF PREPARER          TITLE

_____
ADDRESS

_____
CITY          STATE          ZIP

**CERTIFICATE OF DELIVERY OF MAIL**

I hereby certify that on the 30th of DECEMBER 2002, I mailed to

AIRPAX ACQUISITION, L.L.C.

by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached hereto.

CERTIFIED MAIL NO.   9581-0908
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

AURORA DE LA GARZA , District Clerk
Cameron County, Texas

By: _____Rosie Sotelo_____ , Deputy

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1 Article Addressed to:

CORPORATION SERVICE CO.
REGISTERED AGENT FOR
AIRPAX CORPORATION, L.L.C.
800 BRAZOS, SUITE 750
AUSTIN, TX 78701

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)      C. Date of Delivery
                                    1-2-03

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below         ☐ No

3 Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4 Restricted Delivery? (Extra Fee)   ☐ Yes

2 Article Number
(Transfer from service label)   7002-2410-0000-9 31-0915

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540

CAUSE NO. 2002-12-5078-G

FILED _____ O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK
JAN 16 2003
DISTRICT COURT OF CAMERON COUNTY, TEXAS
Gilbert Jaramillo DEPUTY

| | |
|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY § | IN THE DISTRICT COURT |
| AND AS REPRESENTATIVE OF THE § | |
| ESTATE OF MARIA SANTOS GARCIA § | |
| BANDA, DECEASED; JESUS MORENO § | |
| GARCIA, DORA MORENO GARCIA § | |
| BARBARA MORENO GARCIA, ADVIENTA§ | |
| MORENO GARCIA PRADO, SABINA § | |
| MORENO GARCIA, MONICA MORENO § | |
| GARCIA, SOCORRO MORENO GARCIA § | |
| MENDOZA, JUAN PABLO MORENO § | |
| GARCIA, MARIA SANTOS MORENO § | |
| GARCIA, VALERIE MORENO GARCIA, § | |
| Plaintiffs, § | |
| § | |
| § | |
| VS. § | CAMERON COUNTY, TEXAS |
| § | |
| AIRPAX ACQUISITION, L.L.C., AIRPAX § | |
| CORPORATION, L.L.C., AND AIRPAX DE § | |
| MEXICO, S.A., § | |
| Defendants § | 404TH   JUDICIAL   DISTRICT |
| | COURT |

## DEFENDANT AIRPAX CORPORATION, L.L.C.'s ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **DEFENDANT AIRPAX CORPORATION, L.L.C.** and files this its

Original Answer to the Plaintiffs' Original Petition filed herein by **PLAINTIFFS, JESUS**

**MORENO SILVA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF**

**MARIA SANTOS GARCIA BANDA, DECEASED; JESUS MORENO GARCIA, DORA**

**MORENO GARCIA, BARBARA MORENO GARCIA, ADVIENTA MORENO GARCIA**

**PRADO, SABINA MORENO GARCIA, MONICA MORENO GARCIA, SOCORRO**

**MORENO GARCIA MENDOZA, JUAN PABLO MORENO GARCIA, MARIA SANTOS**

**MORENO GARCIA, and VALERIE MORENO GARCIA,** and for cause would respectfully show as follows:

### I.

Defendant, exercising its legal right under customary practice and the Texas Rules of Civil Procedure, denies each and every, all and singular, the allegations contained in Plaintiffs' causes of action and demands strict proof thereof in accordance with the Texas Rules of Civil Procedure.

### II.

As a separate defense, Defendant would further show that on the occurrence in question, the accident was due to the negligence of Plaintiffs and such was a proximate cause of the accident and any injuries or damages claimed by Plaintiffs. Defendant therefore asserts the affirmative defense, if such be necessary, of contributory negligence by Plaintiffs.

### III.

And pleading further, should it be necessary, and in the alternative, Defendant would further show that the accident or any injuries or damages claimed by Plaintiffs were proximately caused by third-persons or instrumentalities over which it had no control.

### IV.

Further answering, Defendant states that there is no entity known as "AIRPAX ACQUISITION, L.L.C."

**V.**

Defendant further plead the doctrine of accord and satisfaction, as it has tendered to Plaintiffs and Plaintiffs have accepted to their full satisfaction a sum certain.


WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiffs take nothing by their suit and that this Defendant have judgment, for costs of suit, and for general relief to which it may be justly entitled.


Respectfully submitted,

BARKER, LEON, FANCHER
   & MATTHYS, L.L.P.
Tower II - Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437


F. Edward Barker
State Bar No. 01741000
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, F. Edward Barker, certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record, in the manner set forth below, on this the 14th day of January, 2003.

**CMRRR # 7002 0860 0001 2534 9184**
Catherine W. Smith
Law Office of Ramon Garcia, P.C.
222 West University Drive
Edinburg, Texas 78539

F. EDWARD BARKER