United States District Court
Southern District of Texas
FILED

APR 0 2 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESUS MORENO SILVA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF MARIA SANTOS GARCIA | § | |
| BANDA, DECEASED; JESUS MORENO | § | |
| GARCIA, DORA MORENO GARCIA, | § | CIVIL ACTION NO. B03-030 |
| BARBARA MORENO GARCIA, ADVIENTA, | § | |
| MORENO GARCIA PRADO, SABINA | § | |
| MORENO GARCIA, MONICA MORENO | § | PLAINTIFFS' REPLY TO DEFENDANTS' |
| GARCIA, SOCORRO MORENO GARCIA | § | AIRPAX ACQUISITION, L.L.C., AIRPAX |
| MENDOZA, JUAN PABLO MORENO | § | CORPORATION, L.L.C., AND AIRPAX |
| GARCIA, MARIA SANTOS MORENO | § | DE MEXICO, S.A. RESPONSE TO |
| GARCIA, VALERIE MORENO GARCIA, | § | PLAINTIFFS' REPLY TO THE RESPONSE |
| *Plaintiffs* | § | TO PLAINTIFFS' MOTION TO REMAND |
| | § | |
| VS. | § | |
| | § | |
| AIRPAX ACQUISITION, L.L.C., AIRPAX | § | |
| CORPORATION, L.L., AND AIRPAX DE | § | |
| MEXICO, S.A., | § | |
| *Defendants* | § | |

1.    Plaintiffs JESUS MORENO SILVA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF MARIA SANTOS GARCIA BANDA, DECEASED; JESUS MORENO GARCIA, DORA MORENO GARCIA, BARBARA MORENO GARCIA, ADVIENTA, MORENO GARCIA PRADO, SABINA MORENO GARCIA, MONICA MORENO GARCIA, SOCORRO MORENO GARCIA MENDOZA, JUAN PABLO MORENO GARCIA, MARIA SANTOS MORENO GARCIA, VALERIE MORENO GARCIA, reply to Defendants AIRPAX ACQUISITION, L.L.C., AIRPAX CORPORATION, L.L.C., and AIRPAX DE MEXICO, S.A. Response as follows:

**Plaintiffs did not make false statements to the Court as shown by Defendants' own documents.**

2.    As part of the documents filed in the 404th District Court of Cameron County, Defendants filed their Motion to Apply Mexican Law and brief in support. This document had a number of attachments, one of which has already been supplied to the Court. Attached hereto and integrated herein is the translation, as certified by Defendants, of the traffic accident report prepared by the police officers who investigated the subject accident. At the end of the report is found that section titled "Conclusions of the Expert," which states as follows:

> "The driver of vehicle No. 1 (the truck that ran over Maria Santos Garcia Banda)
> violated articles 58, 116, 18, and 28 of the Traffic Regulations as amended."

1

Attached hereto and incorporated herein is a certified translation of those sections of the "Ley de Transito y Transporte" (Traffic and Transportation Law), the applicable statutes cited by the expert investigating the accident as having been violated by the driver of the truck. Article 18 clearly states it is a violation of Mexican law to drive without a license. The translation of Article 18 states as follows: "In order to operate motor vehicles within the State, the drivers must possess a valid Driver's License." This is one of the statutes shown as violated by the driver of the truck.

3.      It is unknown where the unverified photocopies attached to Defendants' Response came from. What seems to be clear is that Mr. Barker, counsel for Defendants, is himself attesting not only to the accuracy of the copy but also that, "Said license was current at the time of the accident." As such, he has made himself a witness in this case and should be excused from representing the Defendants. What is clear is that the driver of the truck which killed Plaintiffs' decedent was cited for not having a license.

4.      The plain truth is that whether the driver was cited for not having a valid driver license, which Plaintiffs contend he was, is not dispositive on the issue of the citizenship of Airpax de Mexico, S.A. which is the real issue here.

**The one satisfaction rule argument made by Defendants is not at issue here.**

5.      Defendants cite *Crown Life Insurance Company v. Casteel,* 22 S.W. 3d 378 (Tex. 2000) for the proposition that, because the driver of the truck paid a criminal fine in Mexico, Plaintiffs should not be entitled to sue and recover damages in this civil case against the owner of the truck and employer of the driver.  This argument makes about as much sense as if Defendants argued that because a drunk driver is required to pay a criminal fine in Texas,  a Plaintiff seeking damages could not sue him in a civil suit under theories of tort.

6.      The issues in *Casteel* were different anyway.  In that case, Casteel was an insurance agent who had been sued by insurance customers named Ferguson together with his company Crown Life Insurance Company.  Because Casteel's insurance business was effectively ruined by the extensive Crown Life litigation,  Casteel crossclaimed against Crown Life for making misrepresentations to him which he passed on to his customers.  The case went to trial, and Fergusons won against Crown Life and Casteel. The Fergusons assigned their claim against Casteel to Crown as a condition of settlement with Crown Life.  The question was whether Crown Life, in the shoes of the Fergusons, could claim a credit as to Casteel.  As the court stated, "This case presents an unusual situation for applying the one solution rule" at 391.

7.      Specifically *Casteel* deals with the application of settlement credits.  Here, there has been no trial,  no settlement, much less a verdict.  As stated by the Court, "A Plaintiff must only give credit to a nonsettling defendant for that part of the damage received from settling defendants that are

applicable to all equally." At 391. And, "The nonsettling defendant is entitled to offset any liability for joint and several damages by the amount of common damages paid by the settling defendant, but not for any separate or punitive damages paid by the settling defendant." At 391-92. A criminal fine paid by the driver, a non party, should not act as any bar against Plaintiffs' recovery as to either Defendant in this case. As the Court made clear in *Casteel*, punitive assessments are not the appropriate subject of the "one satisfaction" rule. This case presents more an issue of a collateral source for which the named Defendants should not be entitled to a credit. See *Jones v. Red Arrow Heavy Hauling,* 816 S.W.2d 134, 136 (Tex. App. – Beaumont 1991), writ den'd: "The collateral source rule precludes the tortfeasor from obtaining the benefit of payment conferred upon the injured parties from sources other than the tortfeasor." *Restatement (Second) Law of Torts,* §920A. Again, however, this issue has no bearing on the fact of citizenship of Airpax de Mexico, S.A.

**Defendants' contentions regarding ownership of shares in Airpax de Mexico, S.A. or Airpax Corporation, L.L.C. are pointless.**

8.      Defendants admit that Airpax de Mexico, S.A., which has appeared in this case, is a Mexican corporation incorporated under the laws of Mexico. Who owns the stock or who runs the company is not dispositive with regard to that issue. This Defendant is a Mexican corporation and a Mexican citizen. (See Affidavit of Michael V. Rabasca, the chief financial officer of Airpax Corporation, L.L.C.) Defendants have chosen to either be a "department" of a U.S. company or a separate Mexican corporation, depending on whether they are arguing to remove this case or whether they want to apply Mexican law. Whereas the fact that this Mexican corporation is considered "an arm of" the U.S. company would negate these Defendants' argument to apply Mexican law, it does not change the fact of the citizenship of the Mexican corporation. With Mexican citizens on both sides of this case, under Fifth Circuit law, diversity is destroyed and this case should be remanded.

Dated this the 2nd day of April, 2003.

Respectfully submitted,

LAW OFFICE OF RAMON GARCIA, P.C.
222 W. University Drive
(956) 383-7441
(956) 381-0825 (Telefax)

By: _____
CATHERINE W. SMITH
STATE BAR NO. 18547080
SDT BAR NO. 19360

OF COUNSEL:
RAMON GARCIA
STATE BAR NO. 07641800
SDT Bar No. 3936

## CERTIFICATE OF SERVICE

I, CATHERINE W. SMITH, do hereby certify that on this the 2nd day of April, 2003, a true and correct copies of the above and foregoing Plaintiffs' Reply to Defendants Airpax Acquisition, L.L.C., Airpax Corporation, L.L.C., and Airpax de Mexico, S.A. Response to Plaintiffs' Reply to the Response Plaintiffs' Motion Remand was sent United States Certified Mail, return receipt requested to:

Mr. F. Edward Barker
**BARKER, LEON, FANCHER & MATTHYS, L.L.P.**
Tower II – Suite 1200
555 North Carancahua Street
Corpus Christi, Texas 78478
*Counsel for Defendants*

Mr. Everardo Abrego
**LAW OFFICES OF EVERARDO ABREGO**
944 West Nolana, Suite C
Pharr, Texas 78577
*Co-Counsel for Plaintiffs*

CATHERINE W. SMITH

THE STATE OF TEXAS   §

                          §

COUNTY OF HARRIS   §

## AFFIDAVIT OF TRANSLATION

Before me, the undersigned Notary appears RAMON M. DEL VILLAR who, after being first duly sworn, deposes and says that the facts contained herein are true and correct and based upon his personal knowledge:

1.     "My name is Ramón Miguel del Villar. I am over the age of twenty-one years and competent to make this affidavit.

2.     I am a court interpreter certified for Spanish/English proceedings by the Administrative Office of the United States Courts, and an attorney licensed in the State of Texas with Texas State Bar Number 00785814.

3.     I have been the Chief Interpreter for the United States District Court, Southern District of Texas since May of 1993.

4.     The process to become a certified court interpreter by the Administrative Office of the United States Courts, consists of a written examination followed by an oral examination. The written portion has historically been passed by only about 20% of the candidates taking it. Only if a candidate passes the written examination is the candidate allowed to take the oral portion. The oral portion has historically been passed also by only about 20% of the candidates taking the oral examination. The net result is that only about 4% of the candidates become federally certified court interpreters. Since its inception after the passing of the Court Interpreters Act in 1978 (28 USC §1827), about 20,000 candidates have applied to take the examination and currently there are a little over 800 federally certified court interpreters all over the United States.

5.     I am the holder of license 292 as a State of Texas court interpreter.

6.     In the State of Texas a bill that established the licensing of court interpreters was enacted on January 1st 2002, but the examination procedures are yet to be implemented. Working court interpreters were "grandfathered" by means of a letter from the Judge Presiding of any court in which they had worked.

7.     I hereby certify that the 145 pages attached hereto are an English translation of Criminal Cause 197/2001 heard in the Republic of Mexico against Magdaleno Alcocer Muñiz. I further certify that said translation is a fair and accurate translation of the Spanish language original."

FURTHER AFFIANT SAYETH NOT.



_____
RAMON M. DEL VILLAR

BEFORE ME, the undersigned Notary Public, appeared today RAMON M. DEL VILLAR who, having first been placed under oath, under his oath stated that he is the person whose signature appears affixed to the foregoing statement and further stated under his oath that what said statement contains is of his personal knowledge and true and correct.

SUBSCRIBED in Houston, Texas on this 7Th day of _November_ of 2002.



CYNTHIA SCHATZ
MY COMMISSION EXPIRES
May 6, 2003

_Cynthia Schatz_
Notary Public in and for the State of Texas

My commission expires: May 6, 2003

2

(PAGE 1)
TRAFFIC AND CIRCULATION OFFICE

Official Communication No.

840/01

File No.  05/2001

(A SEAL WITH THE MEXICAN EMBLEM
AND DATED MAY 3, 2001, 7:00 p.m.)

SUBJECT:    Detention of vehicle and a person

OFFICE OF THE FIRST STATE INVESTIGATING PROSECUTOR
Building

As provided by article 204 of the Traffic Regulations as amended, please find a transcript of the accident report filed by the undersigned, RUBEN LOPEZ-GONZALEZ, Traffic Officer No. 35, assigned to this Office as an expert, of a VEHICLE-PEDESTRIAN ACCIDENT occurred on May 3 of this year at 12:10 p.m. on the streets of BLVD. M.C. LERMA MORALES AND GONZALEZ of the Official Plat of the City. The accident involved, No. 1 a TRUCK, make WHITE, year 1968, type TRAILER, COLOR WHITE, with plates 2AL309 of TEXAS. owned by AIRPAX DE MEXICO, driven by MAGDALENO ALCOCER-MUÑIZ, who is 49 years of age and a resident at 72 Soldadores and 27th, Santa Elena Subdivision. No. 2 Two individuals hit by the vehicle, the first, MARIA ELENA GARCIA-BANDA, approximately 65 years of age, who shows blows to different areas of her body (address, Lopez Portillo Subdivision). She was taken by an ambulance of the CRUZ VERDE to the General Hospital, where she remains under observation. The second, MARIA PETRA GARCIA-BANDA, 60 years of age, address at 1st of May Street, Control 3 North. She died at the scene and shows blows to the thorax  and to different areas of her body. The First Investigating Prosecutor attested to the facts at the scene of the accident.

**CAUSES OF THE ACCIDENT. The driver of vehicle No. 1 states that he was driving south to north on M.C. Lerma Boulevard, left lane, next to the central stripe and between the streets of Morelos and Gonzalez, he runs over with his left front side (front tire) the TWO PEDESTRIANS who apparently were attempting to cross M.N. Lerma Blvd. from west to east. The deceased pedestrian ended lying on her back, face up and her head to the west in front of the front tire, which had stains of what seemed to be blood. There is a tire mark 11 meters long on dry asphalt of the rear tires and further ahead a marking 2.60 meters long of the rear tires of the tractor.**

**WEATHER WAS GOOD. ASPHALT WAS DRY.**

**CONCLUSIONS OF THE EXPERT.** The driver of vehicle No. 1 violated articles 58, 116, 18 and 28 of the Traffic Regulations as amended.

What is hereby advised to you for the pertinent legal effects. I am **ARRESTING MAGDALENO ALCOCER-MUÑIZ** who will be in custody in the lockup of the State Police. The arrestee was DRIVING SOBER, as per medical certification No. 21551

(ORIGINAL ATTACHED), and I ordered vehicle No. 1 to be placed in the Official Traffic Violations Lot. I would request that once the respective inquest is closed, the vehicle be returned to me to proceed to impose the pertinent administrative sanctions.

H. MATAMOROS, TAMAULIPAS, MAY 3, 2001

R E S P E C T F U L L Y
"RESPECT TO THE VOTE. NO REELECTION."
BY ORDER OF THE LOCAL TRAFFIC DIRECTOR
TRAFFIC POLICE OFFICER No. 35
ASSIGNED AS EXPERT.

(A SEAL OF THE TRAFFIC OFFICE,      (A SEAL OF THE LOCAL POLICE)
MATAMOROS, STATE OF          (A SIGNATURE)
TAMAULIPAS)

(A SIGNATURE)
RUBEN LOPEZ-GONZALEZ

# ARTICLES

# AND REGULATIONS

**FRICKEL'S TRANSLATIONS AND INTERPRETING**

**MISSION 956-585-4647 – EDINBURG 956-380-6700 – FAX 956-380-6447- CELL 956-453-7846**

**E-mail address: Frickel00@cs.com**

# CHAPTER SEVEN

# ON THE CIRCULATION OF VEHICLES

**ARTICLE 58.-** The circulation is the act of traveling on public state roadways in the manner set forth by the Law and these Regulations

# CHAPTER EIGHT

# ON PEDESTRIANS

**ARTICLE 116.-** With the limitations set forth by these Regulations, the children, the elderly, the handicapped and all pedestrians in general shall have priority during vehicle circulation; therefore, the drivers shall be duly considerate towards pedestrians and shall take all necessary precautions and exercise due care for the protection and safety of the physical integrity of the pedestrians. The drivers shall yield the right-of-way to all pedestrians when they are in the process of crossing the streets, regardless of the traffic control signal indication given.

# CHAPTER FIVE

# ON DRIVING LICENSES AND PERMITS

**ARTICLE 18.-** In order to operate motor vehicles within the State, the drivers must possess a valid Driver's License.

**ARTICLE 28.-** The owners of motor vehicles shall not allow their vehicles to be operated by anyone who does not possess a valid Driver's License or Driving Permit, being jointly liable for any traffic violations committed by the person operating the vehicle.

# CERTIFICATION AND

# AFFIDAVIT OF THE

# TRANSLATOR

**FRICKEL'S TRANSLATIONS AND INTERPRETING**
MISSION 956-585-4647 – EDINBURG 956-380-6700 – FAX 956-380-6447- CELL 956-453-7846
E-mail address: Frickel00@cs.com

**AFFIDAVIT**

**April 1, 2003**

1. My name is Monica S. Frickel.   All statements made in this statement are true and correct and they are based on my personal knowledge.   I am competent to make this statement.

2. I was born in Misiones, Argentina.   It was in Argentina where I attended the school and the University.

3. I am a professional translator.   After five years in the University where I took 80 subjects and passed all the exams, I was granted a university degree in translations with expertise in Legal, Commercial, Literary and Scientific translations from Spanish into English and from English into Spanish.

4. The **University Degree** that I have is from the "UNIVERSIDAD ADVENTISTA DEL PLATA" which is a branch of the "Adventist University of Loma Linda" in Loma Linda, California.

5. Attached you will find a copy of the document that certifies that I passed the "Bowne Global Solutions former Berlitz Institute" exam to be certified by them as a "**Court Interpreter**".

6. I am a "**State Licensed Court Interpreter for the State of Texas**" (**License Number: 1014**)

7. I have been a self-employed as an English/Spanish translator and interpreter for almost 5 years in the Rio Grande Valley.   I have served as an interpreter in the Federal Court in the Southern District of Texas with U.S. Magistrate Felix Recio and U.S. Magistrate Judge William Black.   I also served as an interpreter in an interim basis in the Federal Court before U. S. Magistrate Dorina Ramos U.S. Magistrate Tracy Caperton and The Honorable Judge Rady Crane in the U. S. District Court, Southern District of Texas, McAllen Division.   On several occasions, I have been retained to work as an interpreter for the Federal Depositions taken by the U. S. Attorneys in Brownsville, Texas.   I work as an interpreter, on a regular bases, for the State Bar of Texas, Harlingen field, in the Hearings of The Grievance Committee.

1

8. All translations made by me are true, correct and accurate to the best of my knowledge and abilities.

9. I also assist governmental agencies and private agencies like the Texas Commission For the Blind in their conferences and workshops.

FURTHER AFFIANT SAYETH NOT

<u>MONICA S. FRICKEL</u>

SUBSCRIBED AND SWORN TO BEFORE ME, by the said MONICA S. FRICKEL on this the 2nd day of April, 2003.



Notary Public in and for the
STATE OF TEXAS
My Commission Expires:

(Notary's Printed Name)

SILVIA C. LOYA
Notary Public, State of Texas
My Commission Expires 08-22-05

2

## CERTIFICATION OF THE TRANSLATOR

" I, MONICA S. FRICKEL, a university graduated translator with expertise in legal, commercial, literary and scientific translations, and who is also a Certified/Licensed Court Interpreter for the state of Texas, CERTIFY that this is a true and correct translation, to the best of her knowledge and abilities, of Articles and Regulations, which were written in Spanish.   In this city of Edinburg, Hidalgo County, State of Texas.   On April 2, 2003"

I CERTIFY,

MONICA S. FRICKEL

University Graduated Translator

&

Certified Court Interpreter



GOBIERNO DEL ESTADO
LIBRE Y SOBERANO
DE
TAMAULIPAS

# LEY DE TRANSITO
# Y TRANSPORTE

ଚ୦ଓଓ

# REGLAMENTO DE TRANSITO
# Y TRANSPORTE

ଚ୦ଓଓ

## 2000

ICULO 15.- Las . placas, engomado o tarjeta de circulación y otra documentación ehículo, serán revalidadas por su propietarios, y términos que indique la Secretaría.

aso de inutilización o pérdida de una o ambas erá gestionarse su reposición presentando e de no infracción.

TICULO 16.- La Secretaría expedirá los tipos guientes:

'ARA SERVICIO PARTICULAR: Son las destinadas al vehículo para uso privado a su propietario;

'ARA SERVICIO PUBLICO DE TRANSPORTE: Son las otorgadas a los usufructuarios de una concesión o permiso de transporte público;

'ARA USO OFICIAL: Son las destinadas a vehículos propiedad del Gobierno del Estado; y

'ARA DEMOSTRACION: Son las que se otorgan a los distribuidores para la demostración y comercialización de sus vehículos.

TICULO 17.- Se reserva la Secretaría el to de las placas, a la persona que no garantice ompleta y suficiente la reparación del daño que ente pueda ocasionar a terceras, por muerte y conducir vehículos de motor.

 જી 38 ભ

# CAPITULO QUINTO

## DE LAS LICENCIAS Y PERMISOS DE MANEJO

ARTICULO 18.- Para poder conducir en el Estado vehículos con motor, se requiere tener licencia de manejo.

ARTICULO 19.- Los tipos de licencia para manejar que expida la Secretaría son:

I. De motociclista;

II. De automovilista; y

III. De chofer.

ARTICULO 20.- Para obtener licencia de motociclista y automovilista se requiere:

I. Llenar la solicitud correspondiente que al efecto proporcionará la Tesorería General del Estado, previa autorización de la Secretaría la que deberá contener el nombre completo del interesado, lugar de nacimiento, domicilio, grupo sanguíneo y factor Rh y en su caso los padecimientos que requiera la atención especial en caso de accidente;

II. Aprobar el examen de pericia en la conducción del vehículo de que se trate y poseer conocimiento sobre las normas de vialidad previstas en este Reglamento;

જી 39 ભ

probar examen, médico psicométrico y de
onocimiento elemental sobre el
ncionamiento del motor y de las partes del
ehículo; y

onocer en forma general sobre la aplicación de
rimeros auxilios a personas lesionadas.

ICULO 24.- Todo tipo de licencia vencerá en
le dos años, contados a partir de su expedición.
reexpedidas, siempre y cuando el solicitante
quisitos correspondientes.

ICULO 25.- Se podrá expedir licencia o
ovisional a toda persona que padezca de una
física, cuando cuente con los aparatos
el vehículo esté acondicionado de tal manera
a conducir sin dificultad.

ICULO 26.- No podrá reexpedirse licencia en
es casos:

urante el tiempo que esté suspendida o
ancelada;

uando no se hayan pagado las multas
correspondientes;

uando el conductor tenga el hábito de
mbriaguez o haya acumulado tres infracciones
n el término de un año, por conducir en estado
le ebriedad o bajo los efectos de cualquier
roga o substancia que disminuyan en manera
iotable su aptitud para manejar, aun cuando por

so 42 os

prescripción médica esté autorizada para su
uso;

IV. Cuando el solicitante, en caso de haber tenido
una incapacidad física o mental, no demuestre
haberse restablecido, mediante certificado
médico; y

V. Por haber acumulado tres infracciones en el
término de un año por haber conducido con
exceso de velocidad.

ARTICULO 27.- La Secretaría expedirá permisos
provisionales para manejar automóviles de servicio
particular y motocicletas, cuando se reúnan los requisitos
siguientes:

I.   Ser mayor de 16 años;

II.  Llenar la solicitud que proporcione la Tesorería
     General del Estado, mediante autorización de la
     Secretaría;

III. Cubrir el pago de los derechos respectivos; y

IV.  Aprobar el examen de pericia y el examen
     médico determinados por la Autoridad.

Este permiso tendrá una vigencia de treinta días
contados a partir de la fecha de expedición y podrá ser
renovado.

ARTICULO 28.- Los propietarios de vehículos
automotores no deberán permitir que éstos sean
conducidos por personas que no tengan licencia o permiso

so 43 os

vigente, siendo solidariamente responsables de las infracciones en que incurra el conductor.

**ARTICULO 29.-** Los conductores de vehículos que posean licencia deteriorada o ilegible, estarán obligados a solicitar su reposición.

**ARTICULO 30.-** Los conductores de vehículos deberán presentar su licencia o permiso y la tarjeta de circulación a las autoridades de tránsito, cuando así lo soliciten éstas.

## CAPITULO SEXTO

## EQUIPO Y DISPOSITIVOS DE LOS VEHICULOS.

**ARTICULO 31.-** Los vehículos que se encuentren en circulación deberán estar provistos del equipo y dispositivos que señalan este Capítulo.

**ARTICULO 32.-** Los vehículos de motor de cuatro o más ruedas, deberán estar provistos de dos faros principales delanteros que emitan luz blanca, colocados simétricamente y al mismo nivel y a una altura no mayor de 1.40 m. ni menor de 0.60 m. Asimismo, estos faros deberán contar con dispositivos para aumentar o disminuir la intensidad de la luz.

La luz alta deberá permitir ver personas y objetos a una distancia no menor de cien metros y la luz baja a una distancia no menor de treinta metros, para ello los

so 44 ca

vehículos deberán contar con tablero que permita distinguir o la luz baja.

**ARTICULO 33.-** Los Artículo anterior, deberán ad menos de dos lámparas coloc emitan una luz roja visible de trescientos metros, y de do emiten una luz blanca o distancia de cien metros.

Los remolques o sem de las luces posteriores colo nivel y a una altura no mayor m.

Además deberán cont luz blanca que ilumine la pla distancia aproximada de quin

**ARTICULO 34.-** semirremolques o remolqu lámparas direccionales que a la izquierda. Estarán col posterior del vehículo, simé El color de las misma será: o ámbar para las pos acondicionadas de tal man conductor pueda verificar vehículo.

levar en el exterior y en la parte delantera un rótulo que mencione el lugar de destino;

TIMBRES: Llevarán los necesarios operados por medio de cables o contactos en toda la extensión del interior de la carrocería.

PASAMANOS: Que permitan a los pasajeros sujetarse y conducirse con seguridad en el interior del vehículo.

GUIA DE PASAJEROS: En el exterior debidamente iluminado por las noches, llevará el itinerario de ruta autorizada.

VENTILACION: Estarán equipados con el sistema de ventilación indirecta en forma tal, que resulte efectiva la renovación del aire en el interior;

EXTINGUIDOR: Llevarán uno en el lugar adecuado para utilizarse en caso de emergencia;

EQUIPO DE EMERGENCIA: Comprende botiquín, banderolas y linternas rojas;

ALUMBRADO: En la parte delantera exterior y a ambos lados del rótulo de ruta, llevarán dos plafones de color ámbar; en el interior llevarán tres o más plafones de luz fija, distribuidos proporcionalmente; y

≫ 54 ≪

IX. PUERTAS DE EMERGENCIA: En la parte posterior, los vehículos con capacidad para más de 22 pasajeros.

ARTICULO 57.- En caso de accidente, los vehículos deberán contar con dispositivos reflejantes amarillos, portátiles de forma cuadrada, y con dimensiones mínimas de 0.40 m. por lado, y que puedan ser colocados a una distancia de 100 metros del vehículo y sean fácilmente visibles.

## CAPITULO SÉPTIMO

### DE LA CIRCULACION DE LOS VEHICULOS

ARTICULO 58.- La circulación es el hecho de transitar por las vías públicas del Estado, en la forma que establece la Ley y este Reglamento.

ARTICULO 59.- Las indicaciones de los Agentes de Tránsito en los cruceros prevalecerán sobre los semáforos y señales de tránsito.

ARTICULO 60.- Se prohíbe efectuar maniobras y depositar en la vía pública toda clase de materiales de construcción o cosas, que impidan la circulación de peatones y vehículos, salvo cuando exista permiso expreso de la Secretaría; obligándose en este caso los solicitantes, a advertir la existencia del obstáculo mediante banderas durante el día e iluminación durante la noche.

≫ 55 ≪

...s para que la carga quede debidamente

108.- Cuando la carga de un vehículo ...nalmente en más de 0.50 metros de un ... deberá colocarse una bandera roja ...t reflejante o lámpara roja durante la ...el extremo posterior de la carga, y que ...listancia mínima de 150 metros.

) 109.- Cuando se transporten materias ...s, deberán efectuarse en vehículos ...s mismas, en latas o en tambores ...rados. Estos vehículos deberán e star ...guidor de incendios.

) 110.- Solamente podrán trasladarse ...ie la Ley respectiva las considere como ... permiso otorgado por la Autoridad

) 111.- En los casos señalados por los ...iores, los vehículos deberán llevar una ...a parte delantera y posterior de los ...rales que contengan la inscripción: ...IFLAMABLE" o "PELIGRO ...spectivamente.

) 112.- Los vehículos de tracción ...iodrán circular en las zonas comerciales ...Secretaría, debiendo hacerlo por su

so 66 ca

---

extrema derecha y con las precauciones necesarias. La matrícula que se expida deberá ser colocada en el propio vehículo.

ARTICULO 113.- Durante las maniobras de carga y descarga no deberá impedirse la circulación de peatones y vehículos, debiendo reducirse al mínimo las molestias, usándose el equipo adecuado por condiciones de seguridad.

ARTICULO 114.- Solamente podrán trasladarse cadáveres cuando el interesado haya obtenido permiso de la autoridad competente; los vehículos dedicados al servicio de inhumaciones podrán efectuar a cualquier hora del día o de la noche maniobras de carga, descarga y transporte de cajas mortuorias.

## CAPITULO OCTAVO

### DE LOS PEATONES

ARTICULO 115.- Los peatones se sujetarán a las disposiciones a la Ley y este Reglamento.

ARTICULO 116.- Con las limitaciones que señala este Reglamento, los niños, ancianos, minusválidos y peatones en general tendrán preferencia en la circulación, por lo que los conductores le guardarán la consideración debida y tomarán las precauciones necesarias para la protección y seguridad de su integridad física; cediéndoles el paso cuando éstos se encuentren cruzando las calles y

so 67 ca

sobrevenga el cambio de señal de paso de los semáforos que regulan la circulación.

**ARTICULO 117.-** Los peatones incapaces y los menores de ocho años de edad, deberán cruzar las vías públicas por las esquinas y conducidos por personas aptas y mayores.

**ARTICULO 118.-** Se prohíbe a los peatones:

I. Transitar a lo largo de la superficie de rodamiento;

II. Utilizar patines y similares sobre las vías públicas;

III. Cruzar en avenidas y calles de intenso tráfico, por lugares que no sean esquinas o zonas marcadas para cruce de peatones;

IV. Invadir intempestivamente la superficie de rodamiento;

V. Invadir la vía de rodamiento para ofrecer mercancía, servicios o practicar la mendicidad; y

VI. Circular diagonalmente por los cruceros

**ARTICULO 119.-** Para circular en la vía pública, los peatones observarán las reglas siguientes:

I. En intersecciones no controladas por semáforos o Agentes de Tránsito, los peatones deberán

cruzar después de haberse cer
pueden hacerlo con toda seguridad

II. Cuando no existan aceras en la
deberán circular por el acotamie
defecto por la orilla de la vía; y

III. En los lugares en donde haya pa
para peatones, deberán hacer uso d

## CAPITULO NOVENO

### DE LA VELOCIDAD

**ARTICULO 120.-** La velocidad má
en la ciudad será de 40 km. por hora. La Se
modificar esa velocidad  en los casos d
necesario.

**ARTICULO 121.-** Los vehíc
disminuir la velocidad a 20 km. por hora, en
con densidad de circulación de peatones y d
pasar frente a escuelas, lugares de espectá
de reunión.

**ARTICULO 122.-** En las esquinas
con señal de "ALTO", los conductores de
sin rebasar las líneas que para este objeto e

**ARTICULO 123.-** Cuando un veh
rebasado por otro, deberán conservar
disminuir su velocidad.

CAUSE NO. 2002-12-5078-G

JESUS MORENO SILVA, INDIVIDUALLY    §    IN THE DISTRICT COURT
AND AS REPRESENTATIVE OF THE        §
ESTATE OF MARIA SANTOS GARCIA       §
BANDA, DECEASED,   JESUS MORENO     §
GARCIA, DORA MORENO GARCIA,         §    CAMERON COUNTY, TEXAS
BARBARA MORENO GARCIA, ADVIENTA,    §
MORENO GARCIA PRADO, SABINA         §
MORENO GARCIA, MONICA MORENO        §
GARCIA, SOCORRO MORENO GARCIA       §    404TH JUDICIAL DISTRICT
MENDOZA, JUAN PABLO MORENO          §
GARCIA, MARIA SANTOS MORENO         §
GARCIA , VALERIE MORENO GARCIA      §
                                    §
VS.                                 §
                                    §
AIRPAX ACQUISITION, L.L.C.,         §
AIRPAX CORPORATION, L.L. AND        §    404TH JUDICIAL DISTRICT COURT
AIPAX DE MEXICO, S.A.               §

## AFFIDAVIT OF MICHAEL V. RABASCA

COUNTY OF DORCHESTER    §
                        §
STATE OF MARYLAND       §

BEFORE ME, the undersigned authority, personally appeared Michael Rabasca, who, being by me duly sworn, deposed and said:

1.    My name is Michael Rabasca.  I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated in it.

2.    I am the Chief Financial Officer of Airpax Corporation, L.L.C., and by virtue of both my position within the company as well as length of employment with the company, I have personal knowledge of the following facts:

a)    In February of 1999, Airpax Corporation's management accomplished a buy-out of all of the stock in Airpax Corporation from Philips Electronics North America Corporation and formed a new corporation entitled Airpax Corporation, L.L.C.. At that time, Philips North American Electronics Corporation ceased to have any ownership interest, control or influence over Airpax Corporation. The "Airpax Corporation" which had been a subsidiary of Philips North American Corporation was dissolved at that time and the only remaining survivor of the Airpax entities is the present survivor, Airpax Corporation, L.L.C.

3.    As stated, I am the the Chief Financial Officer of Airpax Corporation, L.L.C. and as such I am a custodian of the records attached to this affidavit.

4.  The records attached to this affidavit, consisting of $\underline{34}$ pages are kept by Airpax Corporation, L.L.C. in the regular course of its business. It was the regular course of that business for an employee or representative of the business with knowledge of the act, event, condition, or opinion recorded to keep these records or to transmit information thereof to be included in such records. The records were made at or near the time of the act, event, condition, or opinion recorded, or reasonably soon thereafter. The attached records are true and correct duplicates of the originals.

5.    Airpax Corporation, L.L.C., is a Delaware Corporation with its principal place of business in Cambridge, Maryland. Attached hereto and Incorporated by reference are a Tab A, The LLC Agreement of Airpax Acquisition, L.L.C.,; Tab B, the Certificate of Formation of Airpax Acquisition, L.L.P.; Tab C, a Certificate of Amendment changing the name of the Airpax Acquisition to Airpax Corporation, L.L.C.; Tab D, the Certificate of Incorporation for Electronic Packaging Products, Inc.; Tab E, the Certificate of Incorporation of Power Protection Products; Inc.; Tab F, the Certificate of Incorporation for

Thermal Sensing Products, Inc., and at Tab G the present ownership chart of the surviving entities.    Per the LLC Agreement, the three Delaware Corporations have been the only owners of Airpax Corporation, L.L.C.

6.    Electronic Packaging Products was sold and no longer has any interest in Airpax Corporation, L.L.C., who is presently wholly co-owned by Power Protection Products, Inc. and Thermal Sensing Products, Inc., two Delaware Corporations.

7.    Airpax Corporation, L.L.C., has a warehouse type facility in Brownsville, Texas to transition component parts into, and out of, our assembling department located in Matamoros, Mexico.  There is no one physically stationed in the Brownsville, Texas Airpax facility with strategic decision making responsibilities of any significance.  The employees in this warehouse are given tactical assignments and procedures to follow.  This is the only facility of Airpax Corporation, L.L.C. located within the entire state of Texas.

8.    The Airpax Corporation, L.L.C. department, located in Matamoros, Mexico is incorporated in Mexico as is required under Mexican law, however, in reality it is considered a mere department within the overall company.  In this regard the Mexican department had issued 7,523,661 shares of stock, all of which except one share is owned by Airpax Corporation, L.L.C., with that lone share being owned by Power Protection Products, Inc., [See Chart attached hereto].  The hiring and firing of all key personnel of Airpax de Mexico is done in Maryland at the home office of Airpax Corporation, L.L.C.,; the day to day activities of Airpax de Mexico is monitored and ultimately controlled by officers of the company in Maryland and indeed, about every other month the Executive Vice President of Airpax Corporation, L.L.C., travels to Airpax de Mexico to perform management onsite and other management duties; Airpax de Mexico owns no production

related assets as all of these assets located in Mexico are owned by Airpax Corporation, L.L.C.; the only asset of substance owned by Airpax de Mexico is the building; inventory stored at Airpax de Mexico is owned by Airpax Corporation, L.L.C., Airpax de Mexico makes no sales to any other "customers" except Airpax Corporation, L.L.C.; all raw products and inventory sent to Airpax de Mexico are purchased in Maryland at the home office and remain the property of Airpax Corporation, L.L.C., all cash funding for Airpax de Mexico is provided by Airpax Corporation, L.L.C.. Since Mexico has no third party sales, they are dependent on the US company to fund weekly payroll and fund operating expenses; all local accounting and any local taxes paid as a result of activities conducted by Airpax de Mexico is consolidated with that of Airpax Corporation, L.L.C.. In every way the corporate formality of Airpax de Mexico is ignored by Airpax Corporation, L.L.C. and the Mexico facility is in fact deemed a mere department of Maryland based home office, Airpax Corporation, L.L.C.

*Michael V. Rabasca*

Michael V. Rabasca

Sworn to and subscribed before me on this the 24th day of January, 2003.

*Carol V. Perry*

NOTARY PUBLIC

CAROL V. PERRY

Printed Name

My Commission Expires: 4/1/2007